1  JENNIFER H. ROSARIO, SB# 240562
   E-Mail: rosario@lbbslaw.com
2  DANIEL G. BATH, P.C. SB#119514
   E-Mail: bath@lbbslaw.com
3  **LEWIS BRISBOIS BISGAARD & SMITH LLP**
2850 Gateway Oaks Drive
4  Suite 450
Sacramento, California 95833
5  Telephone: (916) 564-5400
Facsimile: (916) 564-5444
6
7  Attorneys for CITIMORTGAGE, INC.

8  UNITED STATES DISTRICT COURT

9  EASTERN DISTRICT OF CALIFORNIA

10

11  Carl T. Ramos,                              ) CASE NO. 2:08-CV-02250-WBS-KJM

12        Plaintiff,                   ) **DEFENDANT CITIMORTGAGE,**
                                               ) **INC.'S MOTION TO DISMISS**
13        v.                           ) **PLAINTIFF'S COMPLAINT (FRCP**
                                               ) **12(b)(6)), AND/OR IN THE**
14  Citimortgage, Inc.,                         ) **ALTERNATIVE, MOTION FOR A**
                                             ) **MORE DEFINITE STATEMENT**
15        Defendant.                   ) **(FRCP 12(e))**

16                                               ) **DATE: January 5, 2009**
                                             ) **TIME:  2:00 p.m.**
17                                               ) **COURTROOM:  5**

18
19
20
21
22
23
24
25
26
27
28

4842-9132-6723.1

**-1-**

DEFENDANT CITIMORTGAGE, INC.'S MOTION TO DISMISS COMPLAINT AND/OR FOR A MORE
DEFINITIVE STATEMENT

*LEWIS BRISBOIS BISGAARD & SMITH LLP*
*2850 GATEWAY OAKS DRIVE, SUITE 450*
*SACRAMENTO, CALIFORNIA 95833*
*TELEPHONE (916) 564-5400*

# TABLE OF CONTENTS

Table of Contents..............................................................................................i,ii

Table of Authorities.............................................................................................iii

I.      INTRODUCTION......................................................................................1

II.     FACTS........................................................................................................3

III.    LEGAL STANDARD FOR 12(b)(6) AND 12(e) MOTION......................4

IV.     ARGUMENT AND AUTHORITIES.........................................................5

      A.     The First Cause of Action for Truth in Lending Act ("TILA")
           Violations Must Fail Because Plaintiff Fails to Allege Facts
           Which Support a Right to Relief....................................................5

           1.     Plaintiff's Claim for Rescission Is Time Barred On Its Fact................5

           2.     Plaintiff Alleges And Thereby Admits That Citimortgage
                   Was Not the Original Lender to the Home Loan Entered
                   Into by Plaintiff and Beneficial..............................................6

           3.     Plaintiff Alleges And Thereby Admits That Citimortgage
                   Was Not The Creditor to Whom the Obligation Was
                   Initially Payable..................................................................6

      B.     The Second Cause of Action for Fair Debt Collection Practices
           Act Violations Must Be Dismissed Because Plaintiff Has Not Alleged
           Any Specific Acts or Conduct on Citimortgage's Part Which Would
           Constitute Violations.................................................................7

      C.     The Third and Seventh Causes of Action for Fraud and Deceit Must be
           Dismissed Because Plaintiffs Failed to Alleged Fraud With Specificity..................7

      D.     The Fourth Cause of Action for Violations of the Fair Credit Reporting Act
           Is Moot Because Citimortgage Has Corrected Its Reporting to the Credit
           Bureaus...................................................................................8

      E.     The Sixth Cause of Action Based on Breach of Contract Must Be
           Dismissed Because Citimortgage was not a party to and did not Negotiate

           the Contract at Issue with Plaintiff...........................................................................9

F.     The Eight Cause of Action for Violations of Business and Professions Code
        §17500 Must Be Dismissed Because Plaintiffs Have Not Alleged
        Specific Acts or Conduct of Citimortgage which would Constitute
        Violations....................................................................................................................9

G.    The Ninth Cause of Action for Violation of the Convenant of Good
        Faith and Fair Dealing Must be Dismissed Because Plaintiffs Have
        Not Alleged Specific Acts or Conduct of Citimortgage which would
        Constitute Violations...............................................................................................10

H.    Plaintiff's Request for the Relief of Rescission is Time-Barred Because
        Plaintiff Did Not File His Complaint Within the Statutory Required
        Period.......................................................................................................................11

I.     Plaintiff Has Not Stated a Claim or Basis for Recovery of Attorney's Fees.............11

V.    MOTION FOR MORE DEFINITE STATEMENT PURSUANT TO RULE 12(E).............11

VI.   CONCLUSION.......................................................................................................13

# TABLE OF AUTHORITIES

## Cases

*Ackerman v. Northwestern Mutual Life Ins. Co.* 172 F.3d 467, 469 (7th Cir. 1999)..........................8
*Anderson v. District Board of Trustees of Central Florida Community College*, 77
   F.3d 364, 366 (11th Cir. 1996)..........................................................................................12
*Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990)............................................4
*Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964-66 (2007)......................................................5
*Bills v. BNC Mortgage, Inc.* (2007, ND Ill) 502 F.Supp2d 773, 776-777...........................................6
*Cellars v. Pacific Coast Packaging, Inc.* 189 F.R.D. 575, 578 (ND CA 1999)..................................5
*Cervantes v. City of San Diego*, 5 F.3d 1273, 1274 (9th Cir. 1993)..................................................4
*Chabot v. Washington Mutual Bank* (In re Chabot)(2007, BC DC Mont) 369 BR 1, 14-15...........5
*In re Glenfed*, 42 F3d 1541, 1547-48 fn 7 (9th Cir. 1994)...............................................................8
*Miguel v. Country Funding Corp.* (9th Cir. 2002) 309 F.3d 1161, 1164..........................................5
*Swartz v. KPMG LLP* 476 F.3d 756, 764 (9th Cir. 2007)................................................................8

## Codes / Rules

Fed.R. Civ. P. 8(a).................................................................................................................12
Fed. R. Civ. P. 9(b)..............................................................................................................2,8
Fed. R. Civ. P. 12(b)(6)....................................................................................................2,4,11
Fed. R. Civ. P. 12(e).....................................................................................................2,5,11,12
Fed. R. Civ. P. 26(a).................................................................................................................2
Fed.R. Civ.P. 54(b)...............................................................................................................13

15 USC §1640(e).....................................................................................................................11
15 USC section 1641(a).........................................................................................................2,6
USC §1635(f)...........................................................................................................................5

Business and Professions Code §7200.....................................................................................3
Business and Professions Code §17500.....................................................................................3

Section 1641 TILA...................................................................................................................6
Section 1641(f) TILA...............................................................................................................6

Truth and L ending Act, 15 U.S.C. §1601.................................................................................4

CA Civil Code §1670.5............................................................................................................3
CA Civil Code §§1788.1-1788.33............................................................................................7

1   JENNIFER H. ROSARIO, SB# 240562
      E-Mail: rosario@lbbslaw.com
2   DANIEL G. BATH, P.C. SB#119514
      E-Mail: bath@lbbslaw.com
3   **LEWIS BRISBOIS BISGAARD & SMITH LLP**
    2850 Gateway Oaks Drive
4   Suite 450
    Sacramento, California 95833
5   Telephone: (916) 564-5400
    Facsimile: (916) 564-5444
6
    Attorneys for CITIMORTGAGE, INC.
7

8              UNITED STATES DISTRICT COURT

9            EASTERN DISTRICT OF CALIFORNIA

10

11  Carl T. Ramos,                    ) CASE NO. 2:08-CV-02250-WBS-KJM
                                      )
12              Plaintiff,            ) **DEFENDANT CITIMORTGAGE,**
                                      ) **INC.'S MOTION TO DISMISS**
13         v.                         ) **PLAINTIFF'S COMPLAINT (FRCP**
                                      ) **12(b)(6)), AND/OR IN THE**
14  Citimortgage, Inc.,               ) **ALTERNATIVE, MOTION FOR A**
                                      ) **MORE DEFINITE STATEMENT**
15              Defendant.            ) **(FRCP 12(e))**
                                      )
16                                    ) **DATE: January 5, 2009**
                                      ) **TIME:  2:00 p.m.**
17                                    ) **COURTROOM:  5**
                                      )
18  _____   )

19

20         CITIMORTGAGE, INC. (hereinafter "Citimortgage") Defendant in the above-

21  referenced action submits this motion to dismiss Plaintiff's Complaint pursuant to Rule

22  12(B)(6) or, in the alternative, for a more definite statement pursuant to Rule 12(E).

23         In addition, Citimortgage requests the Court to enter an order granting the motion

24  and certifying the order as a final judgment pursuant to Rule 54(b).

25                              **I.**

26                         **INTRODUCTION**

27         Plaintiff's Complaint should be dismissed for failure to state any claim to which relief

28  can be granted.   Plaintiff's Complaint is so vague, ambiguous and inconsistent that

LEWIS BRISBOIS BISGAARD & SMITH LLP
2850 GATEWAY OAKS DRIVE, SUITE 450
SACRAMENTO, CALIFORNIA 95833
TELEPHONE (916) 564-5400

Citimortgage cannot reasonably be required to frame a responsive pleading. Plaintiffs' failure to plead with specificity disables Citimortgage from complying with their initial disclosure duty imposed by Fed. R. Civ. P. 26(a). The complaint additionally fails to comply with Fed. R. Civ. P. 9(b), requirement that fraud be plead with specificity. Because these defects render Plaintiff's Complaint incomprehensible, the Court must dismiss this action against Citimortgage entirely pursuant to Fed. R. Civ. P. 12(b)(6) and/ or require Plaintiffs to submit a more definite statement pursuant to Fed. R. Civ. P. 12(e).

In the alternative, the First Cause of Action for Truth In Lending Act Violations should be dismissed as it fails to state a claim upon which relief can be granted, as plaintiff's claim for rescission of the loan contract is time barred on its face.

Additionally, the First Cause of Action for Truth In Lending Act Violations should be dismissed as it fails to state a claim upon which relief can be granted, as it is alleged and admitted by plaintiffs that Citimortgage was not the creditor to whom the obligation was initially payable.

Additionally, the First Cause of Action for Truth In Lending Act Violations should be dismissed as it fails to state a claim upon which relief can be granted, as it is alleged and admitted by plaintiff that Citimortgage is an assignee of the original creditor, and the alleged TILA violation is not apparent on the disclosure statement, as required by 15 USC section 1641(a).

Additionally, the Second Cause of Action for Fair Debt Collection Practices Act must be dismissed as Plaintiff has not alleged any specific acts or conduct by Citimortgage which would give rise to a violation of this Act.

Additionally, the Third and Seventh Causes of Action for Fraud and Deceit must be dismissed because Plaintiff fails to allege fraud with any specificity, which is required by Federal Rule of Civil Procedure 9(b), "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."

LEWIS BRISBOIS BISGAARD & SMITH LLP
2850 GATEWAY OAKS DRIVE, SUITE 450
SACRAMENTO, CALIFORNIA 95833
TELEPHONE (916) 564-5400

DEFENDANT CITIMORTGAGE, INC.'S MOTION TO DISMISS COMPLAINT AND/OR FOR A MORE DEFINITIVE STATEMENT

LEWIS BRISBOIS BISGAARD & SMITH LLP
2850 GATEWAY OAKS DRIVE, SUITE 450
SACRAMENTO, CALIFORNIA 95833
TELEPHONE (916) 564-5400

1   Additionally, the Fourth Cause of Action for Violations of the Fair Credit Reporting

2   Act is Moot as Citimortgage has already corrected its reporting to the credit bureaus, which

3   was communicated to Plaintiff on two occasions in correspondences from Citimortgage.

4   Additionally, the Sixth Cause of Action based on a Breach of Contract is defective and

5   must be dismissed since Citimortgage was not a party to the home loan contract at issue in

6   Plaintiff's Complaint, which was entered into by Plaintiff and Beneficial

7   Additionally, the Eighth Cause of Action for Violations of the Business and Professions

8   Code §17500 must be dismissed because Plaintiff has not alleged any specific conduct or acts

9   of Citimortgage which would constitute violations of the Code.

10   Additionally, the Ninth Cause of Action for Violation of the Covenant of Good Faith

11   and Fair Dealing is defective and must be dismissed because Plaintiffs have not alleged any

12   specific facts which would support the claim that Citimortgage committed any violations of

13   this Covenant.

14   Additionally, the claim for Attorney's Fees is without merit and must be dismissed

15   because Plaintiff did not allege any specific facts which would give rise to a right to recover

16   attorney's fees, based on contract or statute.

## II.

## FACTS

19   Plaintiff filed his Complaint on September 24, 2008. Pursuant to a Stipulation signed

20   between Plaintiff's and Citimortgage's counsel, the parties agreed to an extension of time for

21   Citimortgage to respond to Plaintiff's Complaint up to and including November 13, 2008.

22   Plaintiff's Complaint alleges the following as causes of action: 1)Truth in Lending Act

23   Violations; 2)Fair Debt Collection Practices Act Violations (State/Federal); 3)Damages for

24   Fraud by Concealment; 4)Violations of the Fair Credit Reporting Act; 5)Violations of

25   California Business & Professions Code §7200; 6)Breach of Contract and Contract

26   Unconscionability (CA Civil Code §1670.5); 7)Fraud and Deceit (CA Civil Code §1709,

27   §1710, §1572); 8)Violations of Business and Professions Code §17500; and 9)Violation of the

28

1 | Covenant of Good Faith and Fair Dealing.  (A copy of Plaintiff's Complaint is attached as
2 | Exhibit "A.")

3 |      Plaintiff's Complaint is based on allegations arising from Plaintiff's purchase of a home
4 | and the home loan Plaintiff entered into with Beneficial California, Inc. (hereinafter
5 | "Beneficial"), on or about September 15, 2005.  (A copy of Plaintiff's home loan document
6 | is attached as Exhibit "B.")  Beneficial is not a party to this action.  Citimortgage was not a
7 | party to the home loan entered into by Plaintiff and Beneficial, but an assignee.  (See Loan
8 | Modification Agreement, attached to Complaint as Exhibit I).  Plaintiff vaguely alleges that
9 | Beneficial (not Citimortgage) was required to provide certain disclosures to Plaintiff under the
10 | Truth in Lending Act, 15 U.S.C. §1601 et seq., ("TILA") any by 12 C.F.R. Part 226 ("Reg Z").

11 |      Plaintiff alternatively alleges in inconsistent and incomprehensible fashion that
12 | Citimortgage was a loan servicer, a debt collector, and a lender with whom he entered into an
13 | agreement to modify his original Beneficial loan.  Plaintiff further alleges that Citimortgage,
14 | as a lender, engaged in "bait and switch" tactics in connection with the loan modification; and,
15 | made improper attempts to collect monies due Citimortgage after he defaulted on his mortgage
16 | loan obligation.

17 | **III.**

18 | **LEGAL STANDARD FOR 12(b)(6) AND 12(e) MOTION**

19 |      A motion under Rule 12(b)(6) of the Federal rules of Civil Procedure analyzes the legal
20 | sufficiency of the claim or claims stated in the complaint.  The issue raised by a 12(b)(6)
21 | motion is whether the facts pleaded would, if established, support a valid claim for relief.
22 | Under Rule 12(b)(6), a dismissal is proper for a failure to state a claim where "it is clear that
23 | no relief could be granted under any set of facts that could be proved consistent with the
24 | allegations." *Cervantes v. City of San Diego*, 5 F.3d 1273, 1274 (9th Cir. 1993).  Additionally,
25 | "[d]ismissal can be based on the lack of a cognizable legal theory or the absence of sufficient
26 | facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d
27 | 696, 699 (9th Cir. 1990).  A complaint must set forth enough factual matters to establish
28 |

LEWIS BRISBOIS BISGAARD & SMITH LLP
2850 GATEWAY OAKS DRIVE, SUITE 450
SACRAMENTO, CALIFORNIA 95833
TELEPHONE (916) 564-5400

-4-

1  plausible ground for the relief sought. *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964-
2  66 (2007).

3  Pursuant to Fed. R. Civ. P. 12(e), if a pleading to which a responsive pleading is
4  permitted is so vague or ambiguous that a party cannot reasonably be required to frame a
5  responsive pleading, the party may move for a more definite statement before interposing a
6  responsive pleading. A rule 12(e) motion is proper where the complaint is so indefinite that
7  the defendant cannot ascertain the nature of the claim being asserted. In such cases, defendant
8  cannot reasonably be expected to frame a proper response. *Cellars v. Pacific Coast*
9  *Packaging, Inc.*, 189 F.R.D. 575, 578 (ND CA 1999).

10  **IV.**

11  **ARGUMENT AND AUTHORITIES**

12  A.  **The First Cause of Action for Truth in Lending Act ("TILA") Violations**
13     **Must Fail Because Plaintiff Fails to Allege Facts Which Support a Right to**
14     **Relief**

15     1.  **Plaintiff's Claim For Rescission Is Time Barred On Its Face.**

16  Plaintiff seeks rescission by his first cause of action, based on Beneficial's alleged
17  failure to provide two copies of a Notice of Right To Cancel. (Complaint 7:9-21) This remedy
18  is only available if suit is brought within three (3) years following the making of the loan. 15
19  USC§1635(f). Plaintiff has pleaded that he made the Beneficial loan on September 15, 2005.
20  (Complaint 3:20-25). Plaintiff did not file suit in the instant matter until September 24, 2008,
21  more than three years after the loan was made. Section 1635(f) is an absolute limitation on
22  rescission actions barring any claim filed more than three years after consummation of the
23  transaction. *Miguel v. Country Funding Corp.* (9th Cir. 2002) 309 F.3d 1161, 1164. The
24  statute is a statute of repose that is not subject to any tolling doctrine. *Chabot v. Washington*
25  *Mutual Bank* (In re Chabot) (2007, BC DC Mont) 369 BR 1, 14-15.

26  ///
27  ///
28  ///

LEWIS BRISBOIS BISGAARD & SMITH LLP
2850 GATEWAY OAKS DRIVE, SUITE 450
SACRAMENTO, CALIFORNIA 95833
TELEPHONE (916) 564-5400

LEWIS BRISBOIS BISGAARD & SMITH LLP
2850 GATEWAY OAKS DRIVE, SUITE 450
SACRAMENTO, CALIFORNIA 95833
TELEPHONE (916) 564-5400

2.   **Plaintiff Alleges And Thereby Admits That Citimortgage Was Not the Original Lender to the Home Loan Entered Into by Plaintiff and Beneficial**

Plaintiff alleges Citimortgage, as a loan servicer, violated Section 1641 of the TILA by failing to comply with Plaintiff's request for the name and address of the "true" note holder. (Complaint 6:18-24)  Plaintiff, however, has effectively alleged that Citimortgage is the assignee of the Beneficial loan and the true noteholder, by attaching as Exhibit I to the Complaint the Loan Modification Agreement between plaintiff and Citimortgage (hereinafter the "Agreement").  By admitting that Citimortgage is not a loan servicer, but an assignee of the original creditor, Plaintiff has failed to state a claim for any TILA violation under section 1641(f), based on Citimortgage's alleged failure to provide the name of the note holder.

3.   **Plaintiff Alleges And Thereby Admits That Citimortgage Was Not The Creditor To Whom The Obligation Was Initially Payable.**

Plaintiff seeks rescission by his first cause of action based on the alleged failure of the original lender, Beneficial, to provide two copies of a Notice of Right To Cancel when the loan initially was made. (Complaint 3:20-25; 4:17-20; and 6:9-14) Plaintiff further alleges and thereby admits that Citimortgage was not the original lender. (Complaint 3:20-25 and Exhibit C thereto).

Citimortgage, as an assignee of the original lender, or as a loan servicer, cannot be held liable for damages based on its alleged failure to comply with plaintiff's notice to rescind because the basis for the requested rescission was an alleged disclosure violation not apparent on the face of the disclosure statement. See 15 USC §1641(a). *Bills v. BNC Mortgage, Inc.* (2007, ND Ill) 502 F.Supp2d 773, 776-777. It is axiomatic that the copies of the two Notices of Right To Cancel are documents separate and distinct from the disclosure statement. Citimortgage had no obligation under the TILA to go beyond the face of the disclosure statement to investigate plaintiff's claim. Id. Further, plaintiff has not pleaded any facts to state a claim for rescission under the TILA against Citimortgage as a putative "loan servicer."

**B.**   **The Second Cause of Action for Fair Debt Collection Practices Act Violations Must Be Dismissed Because Plaintiff Has Not Alleged Any Specific Acts or Conduct on Citimortgage's Part Which Would Constitute Violations**

Plaintiff does not cite any specific sections of the Fair Debt Collection Practices Act and instead generally alleges that Citimortgage is in violation of this act based on allegations that Citimortgage made repeated phone calls to collect Plaintiff's debt.  There is nothing in California's Fair Debt Collection Practices Act that prohibits a debt collector from following up on outstanding debts. Among other regulations, California's Fair Debt Collection Practices Act prohibits debt collectors from collecting a debt by the use, or threat of use, of physical force or violence or any criminal means; by communicating with the debtor's employer regarding the debt or other unauthorized person. (Cal Civ. Code §§1788.1-1788.33) The Fair Debt Collection Practices Act essentially regulates the conduct of debt collectors to prohibit them from engaging in unfair or deceptive acts or practices in the collection of consumer debts and to require debtors to act fairly in entering into and honoring such debts.

Citimortgage did not engage in any of these prohibited activities when it attempted to collect the debt from Plaintiff. It is not prohibited for a debtor to pursue debt collection, which is what Citimortgage did.  Plaintiff does not make any allegations that Citimortgage engaged in any unfair or deceptive behaviors which would have constituted a violation of California's Fair Debt Collection Practices Act.

**C.**   **The Third and Seventh Causes of Action for Fraud and Deceit Must be Dismissed Because Plaintiffs Failed to Allege Fraud With Specificity**

Plaintiffs' Third and Seventh Causes of Action attempt to allege fraud but make no specific allegations as to who concealed any material facts, or who made material misrepresentations, and fails to state when the concealment or misrepresentations were made and fails to allege the contents of the alleged misrepresentation.  In short, Plaintiffs Third and Seventh Causes of Action make no allegation of any concealment or misrepresentation by Citimortgage that could give rise to a cause of action for fraud.

LEWIS BRISBOIS BISGAARD & SMITH LLP
2850 GATEWAY OAKS DRIVE, SUITE 450
SACRAMENTO, CALIFORNIA 95833
TELEPHONE (916) 564-5400

Although a federal complaint must generally satisfy only the notice pleading requirements of Rule 8 (which requires only a short and plain statement of the facts) a complaint which includes allegations of fraud requires more specificity. Federal Rule of Civil Procedure 9(b) requires that: "In alleging fraud or mistake, a party must state with particularity he circumstances constituting fraud or mistake." One of the purposes of requiring that fraud be alleged with particularity "is to force the plaintiff to do more than the usual investigation before filing his complaint" because of the "great harm" that fraud charges can do to the reputation of a business or individual. *Ackerman v Northwestern Mutual Life Ins. Co.* 172 F.3d 467, 469 (7th Cir. 1999): "By requiring the plaintiff to allege the who, what, where, and when of the alleged fraud, the rule requires that plaintiff to conduct a precomplaint investigation in sufficient depth to assure that the charge of fraud is responsible and supported, rather than defamatory and extortionate." *Id.* at 469-470.

Accordingly, Rule 9(b) requires Plaintiffs to allege the time, place and contents of the allegedly false representation, the identity of the person or persons making the allegedly false representation, and facts showing why or how the representations were false when made. *In re Glenfed,* 42 F3d 1541, 1547-48 fn 7 (9th Cir. 1994) *Swartz v KPMG LLP* 476 F.3d 756, 764 (9th Cir. 2007) (plaintiff alleging fraud must plead the "time, place and specific content of the false representations as well as the identities of the parties to the misrepresentations").

Plaintiff fails to state any facts related to Citimortgage related to fraud, and fail to state with any particularity any specifics as to the nature of such alleged fraud. This is exactly  the practice prohibited by Rule 9(b).  For this reason, the Third and Seventh Causes of Action for Fraud must be dismissed.

**D.    The Fourth Cause of Action for Violations of the Fair Credit Reporting Act is Moot Because Citimortgage Has Corrected Its Reporting to the Credit Bureaus**

Plaintiff claims that Citimortgage is in violation of the Fair Credit Reporting Act based on allegations that Citimortgage is continuing to report derogatory information.  However, Citimortgage has already made any necessary and applicable corrections to the major credit

LEWIS BRISBOIS BISGAARD & SMITH LLP
2850 GATEWAY OAKS DRIVE, SUITE 450
SACRAMENTO, CALIFORNIA 95833
TELEPHONE (916) 564-5400

LEWIS BRISBOIS BISGAARD & SMITH LLP
2850 GATEWAY OAKS DRIVE, SUITE 450
SACRAMENTO, CALIFORNIA 95833
TELEPHONE (916) 564-5400

1   reporting agencies.  Citimortgage send Plaintiff two correspondences, dated July 29, 2006 and

2   August 31, 2006, advising him of the corrections.   (A copy of the July 29, 2006

3   correspondence is attached as Exhibit "C"; A copy of the August 31, 2006 correspondence is

4   attached as Exhibit "D.") Plaintiff cannot cite any specific facts that Citimortgage is reporting

5   derogatory information and makes only general allegations.  Citimortgage's correspondences

6   show that it has already resolved Plaintiff's concerns regarding the credit reporting.  Therefore,

7   Plaintiff's Fourth Cause of Action is moot.

8       **E.**    **The Sixth Cause of Action Based on a Breach of Contract Must Be**

9               **Dismissed Because Citimortgage was not a Party to and did not Negotiate**

10              **the Contract at Issue with Plaintiff**

11      The Sixth Cause of Action is predicated on the home loan contract entered into between

12  Beneficial and Plaintiff, which Citimortgage was not a party to.   (See Exhibit "B.")

13  Citimortgage was not the original lender to Plaintiff's purchase of the home and home loan.

14  Citimortgage did not enter into any negotiations with Plaintiff regarding the home loan at

15  issue.  Plaintiff can assert this cause of action against Beneficial since it was a party to the

16  contract but Citimortgage was not.  This cause of action is not, and cannot be, alleged against

17  Citimortgage and must be dismissed.

18      **F.**    **The Eighth Cause of Action for Violations of Business and Professions**

19              **Code §17500 Must Be Dismissed Because Plaintiffs Have Not Alleged**

20              **Specific Acts or Conduct of Citimortgage which would Constitute**

21              **Violations**

22      Plaintiff generally alleges that Beneficial and Citimortgage made false and misleading

23  statements to Plaintiff which were intended to induce him to enter into a contract and loan

24  modification.  Plaintiff does not allege any specific facts as to who allegedly made the false

25  or misleading statements, what the statements were, or when these statements were made.

26  Further, Citimortgage was not a party to the home loan entered into between Plaintiff and

27  Beneficial.   Plaintiff's vague allegations cannot stand and renders this cause of action

28  defective.

DEFENDANT CITIMORTGAGE, INC.'S MOTION TO DISMISS COMPLAINT AND/OR FOR A MORE
DEFINITIVE STATEMENT

LEWIS BRISBOIS BISGAARD & SMITH LLP
2850 GATEWAY OAKS DRIVE, SUITE 450
SACRAMENTO, CALIFORNIA 95833
TELEPHONE (916) 564-5400

1

2

3   **G.    The Ninth Cause of Action for Violation of the Covenant of Good Faith and**

4   **Fair Dealing Must Be Dismissed Because Plaintiffs Have Not Alleged**

5   **Specific Acts or Conduct of Citimortgage which would Constitute**

6   **Violations**

7   Plaintiff alleges that Citimortgage interfered with Plaintiff's rights to receive the

8   benefits of their loan modification contract on the grounds that Citimortgage misled Plaintiff

9   about the prepayment penalty.  The loan modification contract Plaintiff and Citimortgage

10  entered into contained explicit terms and specifically stated that the written loan agreement

11  represented the final agreement between the parties and no oral agreements were permissible.

12  Thus, Plaintiff's claims that Citimortgage made other misleading statements about the

13  prepayment penalty do not stand because the written loan modification contains all terms of

14  the loan modification. (A copy of the loan modification is attached at Tab "E.") Citimortgage

15  did not engage in any conduct which would violate the covenant of good faith and fair dealing

16  as its loan modification explicitly set out the terms of the modification and expressly stated

17  that it was the final agreement.

18  Plaintiff also generally alleges that Citimortgage's conduct caused him to lose his

19  opportunity to refinance at more favorable terms.  Plaintiff alleges that since the real estate

20  market has collapsed, he is must now pay above market interest rates.  As Plaintiff indicates

21  himself, it is the collapse of the real estate market which is now affecting his financial

22  situation, as it is for thousands of homeowners.  Plaintiff's blame is misplaced onto

23  Citimortgage who was not the original lender or party to the home loan between Plaintiff and

24  Beneficial.  Citimortgage did not engage in any conduct which would constitute a violation

25  of the covenant of good faith and fair dealing.

26  ///

27  ///

28  ///

LEWIS BRISBOIS BISGAARD & SMITH LLP
2850 GATEWAY OAKS DRIVE, SUITE 450
SACRAMENTO, CALIFORNIA 95833
TELEPHONE (916) 564-5400

**H.     Plaintiff's Request for the Relief of Rescission is Time-Barred Because Plaintiff Did Not File His Complaint Within the Statutory Required Period**

The Truth in Lending Act provides that any claim for actual or statutory damages must be brought within one year of the closing of the loan or the date the allegedly defective disclosures were provided, whichever is later.  15 USC §1640(e).  The time for the statutory period tolls is based on whether a *claim* is brought.  Plaintiff's letter to Citimortgage does not constitute a claim and was not effective to toll the running of the statutory period.  As Plaintiff's Complaint indicates, Plaintiff entered into the home  loan on or about September 15, 2005.  Plaintiff did not bring a claim and file his Complaint until three years later on September 24, 2008.  TILA's one year statute of limitations to bring a claim for damages has already tolled.  Thus, Plaintiff's request for rescission is time-barred.

**I.     Plaintiff Has Not Stated a Claim or Basis for Recovery of Attorney's Fees**

Plaintiff seeks attorney fees but does not state a claim or basis for their recovery.  Plaintiff is not entitled by contract or statute for an awarding of attorney's fees.  Plaintiff has not alleged any specific facts which would give rise to a right to attorney's fees.  Plaintiff's complaint seeks attorney fees without any basis and is therefore defective.  Further, as stated above, Citimortgage is not a party to the home loan between Beneficial and Plaintiff, which gives rise to the allegations in Plaintiff's Complaint, and is therefore not liable for any damages arising out of the home loan contract.

**V.**

**MOTION FOR MORE DEFINITE STATEMENT**

**PURSUANT TO RULE 12(E)**

Defendant Citimortgage requests the Court, if it is not inclined to grant the motion under Rule 12(b)(6) to grant a motion under Rule 12(e) and order the Plaintiffs to amend the complaint to provide a more definite statement.  Rule 12(e) provides as follows:

> (e) Motion for a More Definite Statement.  A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response.  The motion must be made before filing a responsive pleading and must point out the defects complained of and the details desired.  If the court

LEWIS BRISBOIS BISGAARD & SMITH LLP
2850 GATEWAY OAKS DRIVE, SUITE 450
SACRAMENTO, CALIFORNIA 95833
TELEPHONE (916) 564-5400

orders a more definite statement and the order is not obeyed within 10 days after notice of the order or within the time the court sets, the court may strike the pleading or issue any other appropriate order.

Here, the complaint vaguely lists nine "causes of action" and then generically makes allegations as to Citimortgage as to all causes of action. It is impossible to tell from the complaint any specific facts to support Plaintiff's allegations against Citimortgage. This pleading tactic fails to comply with Federal Rule of Civil Procedure Rule 8(a). The allegations contained in Plaintiff's Complaint are so vague and ambiguous that one cannot determine what conduct is being alleged, against whom and when this conduct occurred. Because of these failures, the Court should order Plaintiffs to provide a more definite statement of the allegations against Citimortgage.

The Court should grant a motion for a more definite statement when the complaint is a "shotgun" pleading:

> . . . in that it is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief. Under the Federal Rules of Civil Procedure, a defendant faced with a complaint such as [plaintiff's] is not expected to frame a responsive pleading. Rather, the defendant is expected to move the court, pursuant to Rule 12(e) to require the plaintiff to file a more definite statement. Where, as here, the plaintiff asserts multiple claims for relief, a more definite statement, if properly drawn, will present each claim for relief in a separate count, as required by Rule 10(b), and with such clarity and precision that the defendant will be able to discern what the plaintiff is claiming and to frame a responsive pleading. *Anderson v District Board of Trustees of Central Florida Community College*, 77 F.3d 364, 366 (11th Cir. 1996).

Rule 12(e) allows a party to move for a more definite statement if the complaint "is so vague or ambiguous that [the responding party] cannot reasonably be required to frame a responsive pleading."

The complaint here presents exactly the problem the *Anderson* court identifies as a "shotgun" approach. No specific conduct on Citimortgage's part is alleged. The claims for relief fail to identify how Citimortgage is responsible for Plaintiff's damages. In the face of such a complaint, Citimortgage cannot be expected to frame a responsive pleading.

Plaintiff's Complaint does not plead with any specificity the allegations, causes of action, or relief sought and therefore Plaintiff must be compelled to provide a more definite

1  statement. Under these circumstances, the Court should order Plaintiffs to provide a more

2  definite statement in the alternative to dismissal of the entire action.

### VI.

### CONCLUSION

5  Plaintiff's Complaint fails against Citimortgage due to its failure to state any cause of

6  action to which relief can be granted, and should be dismissed. In the alternative, Plaintiff

7  should be ordered to amend the complaint to provide a more definite statement that actually

8  includes factual allegations against Defendant Citimortgage. Once Plaintiff is required to

9  actually attempt to plead a cause of action against Citimortgage, it will become obvious that

10  Plaintiff cannot do so.

11  All causes of action must be dismissed or Plaintiff should be ordered to provide a more

12  definite statement as to all causes of action. Citimortgage request the Court to enter an order

13  pursuant to Rule 54(b) certifying its ruling as final as to Citimortgage.

15  DATED: November _13_, 2008   LEWIS BRISBOIS BISGAARD & SMITH LLP

17  By _Jennifer H. Rosario_

18      Daniel G. Bath
        Jennifer H. Rosario

19      Attorneys for CITIMORTGAGE, INC.

LEWIS BRISBOIS BISGAARD & SMITH LLP
2850 GATEWAY OAKS DRIVE, SUITE 450
SACRAMENTO, CALIFORNIA 95833
TELEPHONE (916) 564-5400

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
2850 GATEWAY OAKS DRIVE, SUITE 450
SACRAMENTO, CALIFORNIA 95833
TELEPHONE (916) 564-5400

**EXHIBIT "A"**

DEFENDANT CITIMORTGAGE, INC.'S MOTION TO DISMISS COMPLAINT AND/OR FOR A MORE
DEFINITIVE STATEMENT

DUANE L. TUCKER (State Bar No. 88199)
Law Offices of Duane L. Tucker
27793 Tampa Avenue
Hayward, CA 94544
Telephone: (510) 670-0668
Facsimile: (510) 217-3657

Attorney for Plaintiff Carl T. Ramos

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Carl T. Ramos,<br><br>     Plaintiff,<br><br>  and<br><br>Citimortgage, Inc.,<br><br>    Defendant | Case No.:<br><br>COMPLAINT FOR DAMAGES AND FOR INJUNCTIVE RELIEF AND DEMAND FOR JURY TRIAL<br><br>1. TRUTH IN LENDING ACT VIOLATIONS<br>2. FAIR DEBT COLLECTION PRACTICES ACT VIOLATIONS (State/Federal)<br>3. DAMAGES FOR FRAUD BY CONCEALMENT<br>4. VIOLATIONS OF THE FAIR CREDIT REPORTING ACT<br>5. VIOLATIONS OF CALIFORNIA BUSINESS & PROFESSIONS CODE § 17200<br>6. BREACH OF CONTRACT AND CONTRACT UNCONSCIONABILITY (CA CIVIL CODE §1670.5)<br>7. FRAUD AND DECEIT Calif. Civil Code §1709,§ 1710, § 1572.<br>8. VIOLATIONS OF BUSINESS AND PROFESSIONS CODE §17500<br>9. VIOLATION OF THE CONVENANT OF GOOD FAITH AND FAIR DEALING |

## I. INTRODUCTION

1.    This is an action pursuant to the Truth in Lending Act ("TILA"), 15 U.S.C. §1601, et seq.,

Bus. & Prof. Code § 17200, et seq., and other statutory and common laws in effect. Plaintiff Carl T.

1   Ramos ("Plaintiff"), brings this action against Citimortgage, Inc. ("CITI"), based, in part, on

2   Defendants failure to disclose the material terms of plaintiff's transaction in a clear and

3   conspicuous manner, provide rescission rights in a lawful manner and disclose the name of the

4   true note holder.  Defendant also created an unfair business practice by agreeing to a loan

5   modification without a prepayment penalty but worded the document in a misleading fashion with a

6   prepayment penalty thereby creating an unconscionable contract.

7   2.   Specifically, defendant failed to provide two copies of the Notice of Right to Cancel to

8   plaintiff in violation of 12 C.F.R. §226.23, Reg. Z §226.4(a)(2)-1 and Reg. Z §226.4(b)(2).

9   3.   Specifically, defendant failed to provide the name, address and telephone number of the

10   note holder in violation of 15 U.S.C § 1641.

11   4.   Specifically, defendant contacted Plaintiff after receipt of his letter in violation of the State

12   and Federal Fair Debt Collection Practices Act.  15 U.S.C. § 1692 et seq. and California Civil Code

13   §§ 1788-1788.32).

14   **II. JURISDICTION**

15   5.   Subject Matter Jurisdiction is conferred on this Court by 15 U.S.C. § 1640(e) and 28 U.S.C.

16   §§ 1331, 1337. The Court has authority to issue a declaratory judgment by virtue of 28 U.S.C. §

17   2201.

18   6.   The Court has supplemental jurisdiction over the Plaintiffs state law claims pursuant to 28

19   U.S.C. § 1367.

20   7.   This Court has personal jurisdiction over the parties in this action by the fact that Defendants

21   are either individuals who reside in this District within California or are corporations duly licensed to

22   do business in California.

23   8.   Venue is proper within this District and Division pursuant to 28 U.S.C. § 1391(b) because a

24   substantial part of the events and omissions giving rise to the claims occurred in this district, and

25

1   because there is personal jurisdiction in this district over the named Defendants because it

2   regularly conducts business in this judicial district.

3                                         **III. PARTIES**

4   9.      The Plaintiff, Carl T. Ramos, is a natural person, (hereinafter referred to as "RAMOS") and

5   was at all times relevant, residing at 7287 Fair Play Way, North Highlands, CA  95660 (the

6   "Subject Property").

7   10.     Plaintiff believes that Defendant Citimortgage, Inc., or at all times relevant to this action was,

8   a domestic corporation, business entity, and/or a "Doing Business As" entity, incorporated in the

9   State of Delaware, with a mailing address of 1000 Technology Drive, O'Fallon MO  63304 and with

10  a registered agent for Service of Process in the State of California as C T Corporation System, 818

11  West Seventh Street, Los Angeles, CA  90017. The official record of the California Secretary of

12  State's Office reflects that Citimortgage, Inc. has a surrender status (Exhibit "A"). A review of the

13  official records of the Missouri Secretary of State's office shows them in good standing with the

14  State of Missouri (Exhibit "B").

15  11.     Plaintiff believes and thereon alleges that at all times relevant hereto, Citimortgage, Inc., in

16  the ordinary course of business, holds and services loans for consumers located nationwide,

17  including California. As the servicer of the subject loan, Citimortgage, Inc. has held itself out as the

18  lender when in fact such representation is most likely untrue.

19                              **IV. PRELIMINARY ALLEGATIONS**

20  12.     On or about September 15, 2005, Plaintiff entered into a consumer credit transaction

21  (hereafter referred to as "Loan Transaction") with Beneficial California, Inc. in which the extended

22  consumer credit was subject to a finance charge and which was initially payable to Beneficial

23  California, Inc.   A true and correct copy of the Promissory Note and Security Instrument provided

24  to Plaintiff by Beneficial California, Inc. is attached as Exhibit "C". The loan transaction was in the

25  amount of $270,762.90.

13.     Beneficial California, Inc. was required to provide Plaintiff certain disclosures pursuant to the TILA. Under TILA and Reg. Z.

14.     Plaintiffs loan is subject to the federal Truth in Lending Act, 15 U.S.C. § 1601 et seq., ("TILA") and its implementing regulations, 12 C.F.R. Part 226 ("Reg.Z") as BENEFICIAL CALIFORNIA, INC. was a "creditor" pursuant to said Act. TILA grants a consumer a three-day right to cancel certain types of real estate loan transactions. This three-day right to cancel applies to Plaintiffs loans with BENEFICIAL CALIFORNIA, INC..

15.     Pursuant to 15 U.S.C. § 1635(a), the three-day cancellation period begins upon the later of the following events: (1) the "consummation of the transaction;" (2) the "delivery of the information and rescission forms" required by that section; or (3) delivery of accurate "material disclosures" required by TILA. 15 U.S.C. § 1635(a).

16.     If the required notice of cancellation are not provided, then the right to cancel extends to three years after the date of the loan. 15 U.S.C. § 1635(f). If a consumer has the right to rescind against a creditor, the right will also apply to any assignees of that creditor. 15 U.S.C. § 1641(c).

17.     A consumer may exercise their right to cancel a transaction by delivery of a written notification of the consumer's wish to cancel the transaction to the creditor's place of business or upon notice to the assignee of the creditor.

18.     Notice is effective upon mailing and notice on the agent servicing the loan is effective notice on the holder of the mortgage. 12 C.F.R. § 226.23(a)(2).

19.     When a consumer rescinds a transaction, the security interest giving rise to the right of rescission becomes void and the consumer is not liable for any amount, including any finance charge. 15 U.S.C. § 1635(b).

20.     Within twenty (20) days after the receipt of a consumer's election to cancel the transaction, the creditor must return to the consumer all money or property given, including all interest and

1  finance charges paid, and shall take all action necessary or appropriate to reflect the termination of

2  any security interest created under the transaction. 15 U.S.C. § 1635(b); 15 C.F.R. § 226.23(d).

3  21.    By a letter dated August 11, 2008 (Exhibit "D" attached and incorporated herein by

4  reference), Plaintiff, notified CITI that he was exercising his rights under the Fair Debt Collections

5  Practices Act § 805 in that they were to terminate all collection calls, requested the identity of the

6  note holders pursuant to 15 U.S.C. § 1641, that he was making a Qualified Written Request under

7  RESPA and pointed out the deficient notice of right to cancel under the Truth In Lending Act but

8  offered to settle the matter by tendering the real property.  Plaintiff gave them until August 25, to

9  respond to his request for settlement

10  22.    On August 27, 2008, Mortgage Litigation Consultants responded to Mr. Andrew Long of

11  Citimortgage (attached as Exhibit "E") that his several communications in the form of phone calls

12  with Plaintiff were in violation of the Fair Debt Collection Practices Act.

13  23.    On August 29, 2008, Plaintiff received a letter (attached as Exhibit "F") acknowledging the

14  August 11, 2008 letter stating they were still researching the matter.

15  24.    After the August 25, 2008, deadline, when Plaintiff heard nothing from CITI except collection

16  calls in violation of the Fair Debt Collection Practices Act, he retained legal counsel.

17  25.    BENEFICIAL CALIFORNIA, INC. was required to provide Plaintiff with two copies each of a

18  completed Notice of Right to Cancel for the loan provided.

19  26.    BENEFICIAL CALIFORNIA, INC. violated TILA by failing to provide Plaintiff with two copies

20  of their Notice of Right to Cancel on each loan.  In fact no notices were ever provided.

21  **FIRST CAUSE OF ACTION FOR TRUTH IN LENDING ACT
    VIOLATIONS AGAINST DEFENDANT**

22  **(Violations of Truth in Lending Laws - 15 U.S.C. §1601, et. seq.)**

23  27.    Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

24  28.    15 U.S.C. § 1601, et seq., is the Federal Truth in Lending Act ("TILA"). The Federal Reserve

25  Board of Governors implements the Federal Truth in Lending Act through Regulation Z (1C.F.R. §

1   2) and its Official Staff Commentary. Compliance by lenders with Regulation Z became mandatory

2   October 1, 1982. Likewise, Official Staff Commentary issued by the Federal Reserve Board is also

3   binding on all creditors.

4   29.      The purpose of TILA is to protect consumers. This is stated in 12 C.F.R. § 226.1, which

5   reads:

6   *§ 226.Authority, purpose, coverage, organization, enforcement and liability... (b) Purpose. The purpose
7   of this regulation is to promote the informed use of consumer credit by requiring disclosures about its
    terms and costs. The regulation also gives consumers the right to cancel certain credit transactions that
    involve a lien on a consumer's principal dwelling.*

8

9   30.      Reg. Z also mandates very specific disclosure requirements regarding home loans with

10  which creditors, including Defendant, must comply:

11  *§ 226.17. General disclosure requirements. (a) Form of disclosures. (1) The creditor shall make the
12  disclosures required by this subpart clearly and conspicuously in writing, in a form that the consumer
    may keep. The disclosures shall be grouped together, shall be segregated from everything else, and
13  shall not contain any information not directly related to the disclosures required under § 226.18.*

14  31.      The purpose of the TILA is to assure a meaningful disclosure of credit terms so that the

15  borrowers will be able to compare more readily the various credit terms available to them and

16  avoid the uninformed use of credit and to protect the consumer against inaccurate and unfair credit

17  billing practices.

18  32.      CITI failed to comply with Plaintiff's request for the name, address and telephone number of

19  the true note holder as requested in the Plaintiff's August 11, 2008 (Exhibit D) letter pursuant to 15

20  U.S.C. § 1641.

21  33.      CITI has held itself out as the note holder and keeping the identity of the true note holder

22  from Plaintiff which Plaintiff believes is a fraudulent act as they are making an intentional

23  misrepresentation and actively concealing known the fact:

24       a.   CITI is required to disclose said information pursuant to 15 U.S.C. § 1641.

25

b. CITI was not the true noteholder at the time requested and recklessly claimed it was knowing it was not true.

c. CITI knew that Plaintiff would rely on said statements as fact thereby believing any remedy they proposed was done so by the true note holder.

d. Plaintiff was not aware that said representation was false.

e. Plaintiff has been harmed in that he has had to bring this action to enforce his rights and will continue to be harmed until they can obtain the true owner of the note through discovery.

34. CITI's loan to plaintiff violates TILA because BENEFICIAL CALIFORNIA, INC. failed to provide the Plaintiff the required two copies of the Notice of Right to Cancel for each loan with the accurate information as required by the statute.

35. As a result of the failure to provide accurate and true copies of the Notice of Right to Cancel for the Loan Transaction, Plaintiff is entitled to the extended three year right to rescind the Loan Transaction.

36. Plaintiff alleges that the improper providing of rescission forms is a prevalent problem in the lending industry, known by both Defendants CITI and BENEFICIAL CALIFORNIA, INC., of which they willfully fail to put in place proper controls to ensure their obligations under the Truth In Lending Act, i.e. providing rescission rights and notices, is met by the agents they employ.

37. Plaintiffs extended right to rescind on the first deed of trust was in effect on August 11, 2008 when Plaintiff validly rescinded the transaction by sending to CITI the demand for rescission as alleged herein (Exhibit D).

38. CITI's failure to rescind the loan and take the action necessary and appropriate to reflect the termination of both of the security interests within 20 days after Plaintiffs rescission of the transaction violates 15 U.S.C. § 1635(b), 15 U.S.C. § 1635(g) and 15 U.S.C. § 1640, and entitles

Plaintiffs to actual damages, statutory damages, attorney's fees, costs, and orders enforcing their rescission of the transaction.

39.    Plaintiff offered to tender funds by tendering their reasonable value (¶ 21), in the form of returning the real property.

40.    Plaintiff requests the court exercise its equitable powers pursuant to 15 U.S.C. § 1635(b) and allow Plaintiff to return the real property to CITI.

   a.   This relief is more favorable to CITI in that they can avoid the cost of a Declaratory Relief action which would, after initiating said action, allow them to foreclose on the property, incur even more costs and time only to receive the real property at much greater expense at the end of a foreclosure process.

## SECOND CAUSE OF ACTION FOR FAIR DEBT COLLECTION PRACTICES ACT VIOLATIONS AGAINST DEFENDANT
### (Violations of Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 et. seq.
### Rosenthal Fair Debt Collection Practices Act
### California Civil Code §§ 1788-1788.32)

41.    Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 et. seq. applies to debt collectors who collect debts on behalf of others.

42.    Defendant CITI is a debt collector under the FDCPA as they did not originate the loan and are currently servicing the loan on behalf of an unknown investor.  See § 803(6) of 15 U.S.C. § 1692.

43.    Rosenthal Fair Debt Collection Practices Act (RFDCPA), California Civil Code §§ 1788 - 1788.32 extends the debt collector activity to creditors and more broadly against persons or entities who are collecting debts of another.

44.    FDCPA does not preempt State law except as to those sections which are inconsistent and the Federal statute specifically states that greater protection is not considered inconsistent.  See § 816(6) of 15 U.S.C. § 1692.

45.   The Rosenthal Fair Debt Collection Practices Act in § 1788.17 requires that all debt collectors, as defined under § 1788.2(c), must comply with the provisions of 15 U.S.C. §1692b - §1692j and subject to the remedies of 15 U.S.C. § 1692k.

46.   Defendant CITI received the Plaintiffs letter dated August 11, 2008 (Exhibit "D" and incorporated herein by reference) sometime before they acknowledged receipt on August 22, 2008 (Exhibit "F" and incorporated herein by reference).  Plaintiff's letter stated, in part:

> *"... we are asserting our rights under Section 805 of the Fair Debt Collection Practices Act in that we are advising you that we have no intent on paying on the debt any further and we wish that all communications cease..."*

47.   Despite said notification, Defendant CITI repeatedly called Plaintiff attempting to collect the debt, even past the date of the letter CITI sent on August 22, 2008 (Exhibit "F" and incorporated herein by reference).

48.   At each call, Plaintiff informed the caller he has asserted said right, asked that they not call. Still the calls persisted.

49.   Such violation is a willful disregard for the rights of the Plaintiff and pursuant to 15 USC § 1692k Plaintiff is entitled to actual damages, statutory penalty up to $1,000.00 and actual attorney fees.

50.   Such violation is a willful disregard for the rights of the Plaintiff and pursuant to California Civil Code § 1788.30 Plaintiff is entitled to actual damages, statutory penalty of no less than $100.00 and no more than $1,000.00 and actual attorney fees.

51.   Plaintiff contends that CITI does not have in place reasonable procedures necessary to avoid such a violation and their acts were therefore willful and they should not be allowed to avoid said damages and awards by claiming they acts were merely a bona fide error.

### THIRD CAUSE OF ACTION FOR DAMAGES FOR FRAUD BY CONCEALMENT AGAINST DEFENDANT

52.   Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

53.   CITI is not the owner/beneficiary of the promissory note and security instrument secured by the property in this transaction. Their correspondences to Plaintiff have fraudulently misled Plaintiff and they are purposely suppressing and concealing the true owner/beneficiary to frustrate the remedies of the Plaintiff.

54.   Plaintiff contends that CITI has not communicated to the true note owner/beneficiary of Plaintiff exercise of their right to cancel and has unilaterally held itself out as the owner/beneficiary which has given the Plaintiff no choice but to file this action which will ultimately lead to the true owner/beneficiary.

55.   Since CITI is required to supply the name, address and telephone number of the true note holder, pursuant to 15 U.S.C. § 1641, the suppression or concealment of this material fact which they are obligated to communicate constitutes fraud.

56.   Plaintiff could not have discovered these intentionally concealed facts by the exercise of ordinary care.

57.   As a proximate cause to said fraud, Petitioner is damaged in that they have been required to file this litigation at great expense and engage in discovery to obtain the information they were required to give by law.

## FOURTH CAUSE OF ACTION FOR VIOLATION OF THE FAIR CREDIT REPORTING ACT AGAINST DEFENDANT
### (15 U.S.C. § 1681 et seq.)

58.   Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

59.   According to the Fair Credit Reporting Act, section 623. A key responsibility of furnishers of information to consumer reporting agencies is to provide accurate information. [15 U.S.C. § 1681s-2].

60.   According to the Fair Credit Reporting Act [15 U.S.C. § 1681n], any person who willfully fails to comply with any requirement imposed the statute is liable to that consumer in an amount equal

1   to the sum of any actual damages sustained or damages of not less than $100 and not more than

2   $1,000 the costs of the action together with reasonable attorney's fees as determined by the court.

3   61.   Plaintiff has notified Citi multiple times of incorrect information reported on his credit report.

4   62.   On July 29, 2006, Citi sent a letter to RAMOS correcting his credit report for errors reported,

5   attached as Exhibit "G".

6   63.   As RAMOS has rescinded his loan, disputed the debt under the Fair Debt Collection

7   Practices Act and has made a Qualified Written Request under RESPA, CITI is prohibited from

8   reporting any delinquency pending the resolution of this matter, but they continue to report

9   derogatory information.

10   64.   THEREFORE Plaintiffs request judgment against Defendant for damages of $1,000 plus

11   costs and fees and attorney fees.

12
13          ## FIFTH CAUSE OF ACTION FOR UNFAIR BUSINESS PRACTICES
                                 AGAINST DEFENDANT
14                    (Violation of California's Unfair Competition Law,
                         Bus. & Prof. Code §17200 et seq.)

15   65.   Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

16   66.   The Court has jurisdiction over this action pursuant to Business and Professions Code § §

17   17200 et seq., specifically Business and Professions Code § 17203, which provides any person

18   who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any

19   court of competent jurisdiction; and the court may make such orders or judgments, including the

20   appointment of a receiver, as may be necessary to prevent the use or employment by any person

21   of any practice which constitutes unfair competition, or as may he necessary to restore to any

22   person in interest any money or property, real or personal, which may have been acquired by

23   means of such unfair competition; and Business and Professions Code Section 17204, which

24   provides for actions for any relief pursuant to the Unfair Competition Law to be prosecuted

25

1   exclusively in a court of competent jurisdiction by any board, officer, person, corporation or

2   association or by any person acting for the interests of itself, its members or the general public.

3   67.   At all times relevant to this Complaint, CITI was acting as a loan servicer and note holder

4   who is in the business of providing and servicing residential mortgages to the general public and

5   was acting within the scope of that business with regard to the loan transactions provided to

6   Plaintiff.

7   68.   As set forth above under the First through Fourth Causes of Action, CITI violated TILA and

8   the Fair Debt Collection Practices Act.

9   69.   Plaintiff entered into a written loan agreement (Exhibit "C"), with BENEFICIAL CALIFORNIA,

10   INC., in the amount of $270,762.90. Subsequently, CITI purchased the beneficial interest of said

11   loan, resold it to parties unknown and now services it.

12   70.   During the course of negotiations with Beneficial at the inception of the loan, the prepayment

13   penalty was to be removed.  During those negotiations, the loan was sold to CITI.

14   71.   On August 31, 2006, Citimortgage sent RAMOS a letter, attached as Exhibit H, which

15   agreed to remove the prepayment penalty and again acknowledged their errors related to the

16   credit report.

17   72.   On September 9, 2006, CITI provided a loan modification agreement, attached as Exhibit I,

18   intending to conform to the terms outlined in Exhibit H.

19   73.   On paragraph 10 of Exhibit I, RAMOS believed he had a right to prepay his loan.

20   74.   In December of 2006, RAMOS had in place a refinance at much more favorable terms but

21   CITI demanded a prepayment penalty.  Their demand is attached in Exhibit "J".

22   75.   As a result of their demand, RAMOS lost the opportunity to refinance his loan and has been

23   forced to pay the CITI loan at a much higher rate of interest.

24

25

76.   Property value of the RAMOS property has now dropped to less than half the value of the CITI loan thereby placing RAMOS in a "lose lose" proposition as he cannot refinance, cannot sell and is forced to pay for a higher than market rate loan.

77.   Such "bait and switch" tactic of stating in the letter that the prepayment penalty would be waived, providing a complex legal document that led RAMOS to believe the prepay was waived and then enforcing it at a refinance is an unfair business practice.

78.   RAMOS has diligently attempted to resolve this matter directly with Citimortgage via written correspondence in excess of fifty times with little to no relief.

79.   WHEREFORE, Plaintiff prays for judgment for rescission and relief as more fully set forth below.

## SIXTH CAUSE OF ACTION AGAINST DEFENDANT
### (Breach of Contract and Unconscionability)

80.   Plaintiffs incorporate all preceding paragraphs as though fully set forth herein.

81.   Plaintiff entered into a written loan agreement (Exhibit "C"), with BENEFICIAL CALIFORNIA, INC. (in the amount of $270,762.90).

82.   Exhibit "C" was drafted by BENEFICIAL CALIFORNIA, INC. and could not be modified by Plaintiff.

83.   Exhibit "C" describes the terms and respective obligations applicable to the parties therein.

84.   Exhibit "H" and "I" describe the modifications the parties agreed to.

85.   CITI willfully failed to comply with the terms of the contract and attempted to enforce a prepayment penalty which led to a lost opportunity for RAMOS of a new loan at more favorable terms and damages.

86.   As a result RAMOS is forced by CITI with a loan that is quite unfavorable to him and very favorable to CITI which is unconscionable (California Civil Code § 1670.5) and therefore should be

1   unenforceable and the court should not enforce those provisions that the court deems to be

2   unconscionable or allow rescission.

3   87.   Plaintiff requests that he be allowed to rescind the loan and tender to CITI the real property.

4   88.   Plaintiff requests that he is entitled to declaratory relief, compensatory damage proximately

5   caused by BENEFICIAL CALIFORNIA, INC. breach of contract as alleged herein prejudgment

6   interest, costs of suit and other relief as the Court deems just and proper.

### SEVENTH CAUSE OF ACTION AGAINST DEFENDANT
### (Fraud and Deceit – California Civil Code §§ 1709, 1710, 1572)

8   89.   Plaintiffs incorporate all preceding paragraphs as though fully set forth herein.

9   90.   CITI willfully deceived Plaintiff to induce them to alter and cause financial harm to himself for

10  CITI own financial gain by misleading him into believing the loan would have the prepayment

11  penalty removed when in fact it did not.

12  91.   CITI's action caused RAMOS to execute a loan modification agreement (Exhibit I) under

13  CITI's deception that is did not have a prepayment penalty, when it did.

14  92.   If CITI was not going to provide a loan modification without a prepayment penalty, pursuant

15  to Civil Code § 1710, they were duty bound to disclose it clearly when they knew their previous

16  correspondence (Exhibit H) had stated as a fact that they would eliminate the prepayment penalty.

17  93.   This concealment of fact with the intent to deceive and intentional misrepresentation to

18  RAMOS by CITI is asserted to be a violation of Civil Code § 1572.

19  94.   WHEREFORE, Plaintiff is entitled to declaratory relief, compensatory damage proximately

20  caused by Defendants acts of Fraud and Deceit as alleged herein prejudgment interest, costs of

21  suit and other relief as the Court deems just and proper.

### EIGHTH CAUSE OF ACTION AGAINST DEFENDANT
### (Violation of Business and Professions Code § 17500 et seq.)

23  95.   Plaintiffs incorporate all preceding paragraphs as though fully set forth herein.

96.     Business and Professions Code § 17500 makes it unlawful for any person, with intent directly or indirectly to perform services, professional or otherwise, or anything of any nature whatsoever or to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated before the public in this state which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading.

97.     BENEFICIAL CALIFORNIA, INC. and CITI made false and misleading statements to Plaintiff intended to induce him to enter into a contract and loan modification with unconscionable term as more fully set forth in the fifth through seventh causes of action.

98.     WHEREFORE, Plaintiff is entitled to declaratory relief, compensatory damage proximately caused by Defendants violation of Business and Professions Code § 17500 et. seq. as alleged herein prejudgment interest, costs of suit and other relief as the Court deems just and proper.

## NINTH CAUSE OF ACTION AGAINST DEFENDANT
### (Violation of the Covenant of Good Faith and Fair Dealing)

99.     In every contract or agreement there is an implied promise of good faith and fair dealing. This means that each party will not do anything to unfairly interfere with the right of any other party to receive the benefits of the contract.

100.   RAMOS claims that CITI violated the duty to act fairly and in good faith.

101.   RAMOS and CITI entered into a contract (Exhibit A);

102.   RAMOS did all, or substantially all of the significant things that the contract required him to do by making the payments under the contract.

103.   That all conditions required for CITI's performance had occurred.

104.   CITI unfairly interfered with RAMOS's right to receive the benefits of the contract as they claimed a prepayment penalty at a time when they led RAMOS to believe they removed the prepayment penalty when they did not.

105.   RAMOS was harmed by CITI's conduct in that RAMOS lost his opportunity to refinance at more favorable terms. Since losing that lost opportunity, the real estate market has collapsed thereby forcing RAMOS to pay substantially above market interest rates to CITI with no ability to get out of the contract on the terms offered in his lost opportunity.

106.   WHEREFORE, Plaintiff is entitled to compensatory damage proximately caused by Defendants violation of the covenant of Good Faith and Fair Dealing in the amount of excessive interest paid from the time of the lost opportunity to date of disposition.

107.   Given the current state of the real estate market, Plaintiff requests that he be relieved of the obligation and surrender the real property to CITI plus the costs of suit and other relief as the Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against each Defendant, jointly and severally, as follows:

A. For actual damages according to proof;

B. For compensatory damages as permitted by law;

C. For consequential damages as permitted by law;

D. For statutory damages as permitted by law;

E. For rescission;

F. For equitable relief, including restitution;

G. For restitutionary disgorgement of all profits Defendant obtained as a result of their unfair competition;

H. For interest as permitted by law;

I. For Declaratory Relief;

J. For Injunctive Relief;

K. For reasonable attorneys' fees and costs; and

1   L. For such other relief as is just and proper.

2

3   Dated: September 18, 2008                By: /s/ Duane L. Tucker
                                             Duane L. Tucker, Attorney for Carl T. Ramos
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**LEWIS BRISBOIS BISGAARD & SMITH** LLP
2850 GATEWAY OAKS DRIVE, SUITE 450
SACRAMENTO, CALIFORNIA 95833
TELEPHONE (916) 564-5400

**EXHIBIT "B"**

4842-9132-6723.1

-15-

DEFENDANT CITIMORTGAGE, INC.'S MOTION TO DISMISS COMPLAINT AND/OR FOR A MORE
DEFINITIVE STATEMENT

# LOAN SUMMARY
## Adjustable Rate Mortgage

BENEFICIAL
7471 WATT AVENUE
#107-B
NORTH HIGHLAN, CA 95660

CARL T. RAMOS
7287 FAIRPLAY WY
NORTH HIGHLAN CA 95660

Thank you for choosing BENEFICIAL for your loan. We understand that your house is more than just collateral—it is your home. So we want you to borrow confidently, fully understanding your loan benefits and loan features.

Please review this summary information carefully, and also be certain to review your ARM loan documents and disclosures for more specific details. Ask us any questions you may have. We will answer all of them and work together with you to ensure your complete understanding and satisfaction.

| Principal Loan Amount | $270,762.90 |
|---|---|
| Loan Origination Fee/Points | $630.59 |
| Document Preparation Fee | $0.00 |
| INITIAL ANNUAL PERCENTAGE RATE | 8.374% |
| Initial Contract Rate | 8.344% |
| Margin | 4.460% |

| Loan Term | 360 months |
|---|---|
| Payment Due Date "e" | Day 15 of each month |
| Monthly Payment * | $2,052.13 |

"e" – estimate
* Payment includes any optional insurance protection elected
See details below. Monthly payment is based on initial contract rate and may vary after fixed rate period.

**Escrow:** Your loan does not escrow real estate taxes or homeowner's insurance. You will need to make arrangements to pay your taxes and insurance directly to your tax assessor and insurance company

**Rate Type:** The interest rate on your loan is variable and subject to change. The rate will be fixed for a two-year period, after which the rate may vary every six months based on the LIBOR index as disclosed in your loan agreement.

**Prepayment Penalty:** Your loan contains a prepayment penalty. Refer to your Loan Repayment and Security Agreement for a detailed description of that penalty.

**Insurance Protection:** Optional insurance protection is not currently available.

### Satisfaction Guarantee
Because we want you to be completely satisfied, we offer a Satisfaction Guarantee. If for any reason you are not satisfied with your loan and you repay it in full within 10 days after the loan funds are disbursed, other than with a refinance of this loan with us, we will refund any interest charges, closing costs and fees. We will also waive any prepayment penalty applicable to your loan.

**Note:** California residents will not receive this satisfaction guarantee on loans not secured by real estate.

I understand these key loan terms:

Borrower _____
          CARL T. RAMOS                        Date

Witness: _____        Date: _____

09/15/2005 12:39                                                                 0112LE07



* R53BA062DA - 93 - LSN - 9 - 000 - 0112LE - Z - 1 - C ** RAMOS * CUSTOMER

**LENDER (called "We", "Us", "Our")**
BENEFICIAL CALIFORNIA INC
7471 WATT AVENUE
#107-B
NORTH HIGHLAN CA 95660

California Finance Lenders License No.   607 0855

**BORROWERS (called "You", "Your")**
RAMOS CARL T
SS# 572257354
7287 FAIRPLAY WY
NORTH HIGHLAN CA 95660

LOAN NO: 211785-807830

| DATE OF LOAN | FIRST PAYMENT DUE DATE | OTHERS | FINAL PAYMENT DUE | | CONTRACT RATE | | |
|---|---|---|---|---|---|---|---|
| 09/15/2005 | 10/15/2005 | SAME DAY OF EACH MONTH | DATE 09/15/2035 | | (per year) 8.344 % | | |
| | | AMOUNT FINANCED | PRINCIPAL | | | | |
| | | 269,397.31 | 270,762.90 | | | | |
| | | | CLOSING FEE | | | | |
| | | | 135.00 | | | | |
| LIFE INS PREMIUM | DISABILITY INS PREMIUM | | | | | | |
| NONE | NONE | | | | | | |
| REL INS PREMIUM | | MARGIN | | | | | |
| NONE | | 4.480% | | | | | |
| | | | | | ORIGINATION FEE/POINTS | | |
| | | | | | 630.59 | | |
| | | MONTHLY INSTALLMENT | | | TERM PERIOD | | |
| | | 2,052.13 | | | 360 | | |
| | | | | | | PREPAYMENT PENALTY | FLOOR |
| | | | | | | YES | 7.844% |

YOU ARE GIVING US A SECURITY INTEREST IN THE REAL ESTATE LOCATED AT THE ABOVE ADDRESS

REQUIRED INSURANCE. You must obtain insurance for term of loan covering security for this loan as indicated by the word "YES" below, naming us as Loss Payee.

YES    Title insurance on real estate security.
YES    Hazard insurance on real estate security

Physical damage insurance on vehicle listed under "Security" above if "Y" appears under "Insured".

Physical damage insurance on other property listed under "Security" above if "Y" appears under "Insured".

You may obtain any required insurance from anyone you choose and may assign any other policy of insurance you own to cover the security for this loan.

(See "Security" paragraph above for description of security to be insured.)

**NOTICE: THE FOLLOWING PAGES CONTAIN ADDITIONAL CONTRACT TERMS.**

08-18-04 RE
OPT PPP

CAB65511

R853BA862DA93CEA8000CAB655710**RAMOS                    *                    CUSTOMER COPY

This Loan Agreement contains provisions allowing for changes in your interest rate, subject to the limits stated in this Loan Agreement. If your interest rate increases, your monthly payments will be higher. If your interest rate decreases, your monthly payments will be lower.

PROMISE TO PAY. In return for your loan described below, you promise to pay us, the Principal (Amount Financed plus prepaid finance charges of Origination Fee/Points, Closing Fee, if any, and, if shown on your Settlement Statement, odd day interest) and Interest computed at the Contract Rate (subject to any adjustment under the Interest Rate and Monthly Payment Changes section below) and any monthly insurance premium, if available in your state for this product and elected by you.

INTEREST. Interest will be charged on unpaid principal until the full amount of Principal has been paid. You will pay us interest at a yearly rate shown on Page 1 of this Agreement in the box labeled "Contract Rate." The interest rate you will pay will change in accordance with the Interest Rate and Monthly Payment Changes section of this Agreement.

The interest rate required by this provision and the Interest Rate and Monthly Payment Changes provision of this Agreement is the rate you will pay both before and after any default as described in this Agreement.

PAYMENTS.

(A) Time and Place of Payments. You will pay us principal and interest by making payments every month.

You will make your monthly payments to us on the same day of each month beginning on the First Payment Due Date shown on Page 1. You will make these payments every month until you have paid all of the principal and interest and any other charges described below that you may owe under this Agreement. Your monthly payments will be applied to interest before principal. If, on the Final Due Date shown on Page 1, you still owe amounts under this Agreement, you will pay those amounts in full on that date, which is called the "maturity date," which amount will include interest at the current Contract Rate

You will make your monthly payments at the business address shown on Page 1 or at a different place that we may give you.

(B) Amount of Monthly Payments. Each of your initial monthly payments will be in the amount shown on Page 1 as "Monthly Installment". Those amounts will change if the interest rate that you must pay changes. We will determine your new interest rate and the changed amount of your monthly payments in accordance with the Interest Rate and Monthly Payment Changes provision of this Agreement.

INTEREST RATE AND MONTHLY PAYMENT CHANGES.

(A) Change Dates. The initial fixed interest rate (Contract Rate) that you will pay will change to an adjustable interest rate on the Due Date of the twenty-fourth (24th) month and the adjustable interest rate you will pay may change on that day every six months thereafter. The date on which your initial fixed rate changes to an adjustable interest rate, and each date on which your adjustable interest rate could change is called a "Change Date".

(B) The Index. Beginning with the first Change Date, your interest rate will be based on an Index. The "Index" is the London Interbank Offered Rate (LIBOR), which is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market, as published in The Wall Street Journal. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index". However, where the LIBOR Index is published in 1/64ths or any other increment requiring additional decimal places, we will only use five decimal places. For example, if the Index rate published was 8.123456%, we would use 8.12345% as the Current Index for that Change Date. If the Index is no longer available, we will choose a new index which is based upon comparable information. We will give you notice of this choice.

(C) Calculation of Changes. Before each Change Date, we will calculate your new interest rate by adding a fixed number of percentage points (called the "Margin") to the Current Index. The Margin on your loan is shown on Page 1 of this Agreement. The result of this addition will be rounded to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section (D) below, this rounded amount will be your new interest rate until the next Change Date.

NOTICE: THE FOLLOWING PAGES CONTAIN ADDITIONAL CONTRACT TERMS.

08-16-04 RE
OPT PPF

*P538A0H20A53CF490UL5ABE55F7CF**RANDS                *                    CUSTOMER COPY

CABB55512

We will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal balance of the loan you are expected to owe on the Change Date in full on the maturity date at your new interest rate in substantially equal payments. The result of this calculation will be the new amount of your monthly payment.

(D) Limits on Interest Rate Changes. The interest rate you are required to pay on your first Change Date will not be greater than three (3) percentage points above or below the initial fixed interest rate (Contract Rate) shown on Page 1 of this Agreement. Thereafter, your adjustable interest rate shall never be increased or decreased on any single Change Date by more than one (1) percentage point from the interest rate you have been paying for the preceding six months. Your interest rate shall never be less than the Floor Rate shown on Page 1 of this Agreement. Your interest rate also shall never be greater than six (6) percentage points above the Contract Rate shown on Page 1 of this Agreement, which is called the "Maximum Rate."

(E) Effective Date of Changes. Your new interest rate will become effective on each Change Date. You will pay the amount of your new monthly payment beginning on the first monthly payment date after the Change Date until the amount of your monthly payment changes again.

(F) Notice of Changes. We will mail or deliver to you a notice of any changes in your interest rate and the amount of your monthly payment before the effective date of any change. The notice will include information required by law to be given to you and also the title and telephone number of a person who will answer any questions you may have regarding the notice.

PAY-OUTS. You agree to pay-outs of Amount Financed as shown on Truth-In-Lending disclosure form. If pay-outs change because loan closing is delayed, (a) you shall pay additional amounts due at closing, or (b) your cash or check will be reduced to cover additional pay-outs.

PREPAYMENT. Subject to the Prepayment Penalty described below, you may prepay any or all of your loan at any time. In any event, if you fully pay before the final payment due date, the amount you owe will be reduced by unearned credit insurance charges, if any. If you prepay before the final due date, Points and any Closing Fee shown on page one, are fully earned when this loan is made and you will not receive a refund of that part of the Finance Charge consisting of Points and any Closing Fee shown on page one.

PREPAYMENT PENALTY. If "YES" is printed in the Prepayment Penalty box on page one of this Agreement, you agree to the following penalty. If you prepay in full within two (2) years of the Date of Agreement (shown on page one), you agree to pay a prepayment penalty equal to the payment of six (6) months' advance interest on the amount prepaid in excess of twenty percent (20%) of the original principal amount. No prepayment penalty will be imposed (a) if this loan is refinanced by another loan with us; (b) after two (2) years; (c) if the loan is prepaid from the proceeds of any insurance; or (d) if we sue you.

LATE CHARGE. If you don't pay any payment in full within 10 days after it's due, you will also pay 5% of the unpaid amount of such payment, as a late charge.

BAD CHECK CHARGE. We will charge you a fee of $15 if any payment check is returned because of insufficient funds or is otherwise dishonored.

OTHER CHARGES. You agree to pay any amounts actually incurred by Lender in connection with the loan account for title examination, appraisal, title insurance, escrow fees, tax service fees, trustee fees involving the real estate covered by your Deed of Trust, and recording, release and reconveyance fees, if any.

FAILURE TO PAY. If you don't pay on time, or fail to observe each covenant and condition of the Deed of Trust or fail to keep required insurance in force, after we notify you, but without our need to demand payment in full, we may sue you for the total amount you owe. You will pay our costs, including reasonable attorney fees, to collect this loan or to realize on any security.

SATISFACTION OF JUDGMENT - SPOUSE'S PROPERTY. The separate property of any married person who signs below shall be subject to execution to satisfy any judgment entered on this Agreement.

DUE ON-SALE. Please note the following provision contained in the Deed of Trust:

Transfer of the Property. If Borrower sells or transfers all or any part of the Property or an interest therein, excluding (a) The creation of a lien or other encumbrance subordinate to this Deed of Trust which does not relate to a transfer of rights of occupancy in the property: Provided, that such lien or encumbrance is not created pursuant to a contract for deed; (b) The creation of a purchase-money security interest for household appliances; (c) A transfer by devise, descent, or operation of law on the death of a joint tenant or tenant by the entirety; (d) The granting of a leasehold interest which has a term

NOTICE: THE FOLLOWING PAGES CONTAIN ADDITIONAL CONTRACT TERMS.

*RS3BA6620A93CEA9000CA9655 13D**RAMOS                    CUSTOMER COPY                    CAB65613

of three years or less and which does not contain an option to purchase; (e) A transfer in which the transferee is a person who occupies or will occupy the property, which is: (A) a transfer to a relative resulting from the death of the borrower (B) a transfer where the spouse or child(ren) becomes an owner of the property; (C) a transfer resulting from a decree of dissolution of marriage, legal separation agreement, or from an incidental property settlement agreement by which the spouse becomes an owner of the property; or (f) a transfer into an inter vivos trust in which the borrower is a, and remains, the beneficiary and occupant of the property, unless, as a condition precedent to such transfer, the borrower refuses to provide the lender with reasonable means acceptable to the lender by which the lender will be assured of timely notice of any subsequent transfer of the benefical interest or change in occupancy: the lender may, at lender's option, declare all sums secured by this Deed of Trust to be immediately due and payable.

PROPERTY INSURANCE:

A. YOUR OBLIGATION TO INSURE. You shall keep the structures located on the real property securing this loan insured against damage caused by fire and other physical hazards, name us as a loss payee and deliver to us a loss payable endorsement. If insurance covering the real property is cancelled or expires while the loan is outstanding and you do not reinstate the coverage, we may obtain, at our option, hazard insurance coverage protecting our interest in the real property as outlined below.

B. LENDER'S RIGHT TO PLACE HAZARD INSURANCE. You authorize us, at our option, to obtain coverage on the Property in an amount not greater than the outstanding balance of principal and interest on the loan or, if known to be less, the replacement value of the Property, in the event that you fail to maintain the required hazard insurance outlined above or fail to provide adequate proof of its existence. You authorize us to charge you for the costs of this insurance and add the insurance charges to your loan. The insurance charges will be added to the unpaid balance of the loan which accrues interest at the Contract Rate. The addition of the insurance charges due might increase the amount of your final installment. The cost of Lender placed hazard insurance might be higher than the cost of standard insurance protecting the property. The Lender placed insurance will not insure the contents of the property or provide liability coverage. The insurance might not be the lowest cost coverage of its type available and you agree that we have no obligation to obtain the lowest cost coverage. We or an affiliated company might receive some benefit from the placement of this insurance and you will be charged for the full cost of the premium without reduction for any such benefit. If at any time after we have obtained this insurance, you provide adequate proof that you have subsequently purchased the required coverage, we will cancel the coverage we obtained and credit any unearned premiums to your loan.

CREDIT REPORTING AND CUSTOMER INFORMATION PRACTICES. If you fail to fulfill the terms of your credit obligation, a negative report reflecting on your credit record may be submitted to a Credit Reporting Agency. You agree that the Department of Motor Vehicles (or your state's equivalent of such department) may release your residence address to us, should it become necessary to locate you. You agree that our supervisory personnel may listen to telephone calls between you and our representatives in order to evaluate the quality of our service to you. You understand and agree that we will call you from time to time to discuss your financial needs and any loan products that may be of interest to you as may be permitted by Applicable Law. For more information regarding our privacy practices, please refer to our Privacy Statement, which is included with your loan documents.

SECURITY. You agree to give us a security interest in the real estate as described in the Deed of Trust.

INSURANCE. Optional credit insurance and any required insurance disclosures are attached to this Agreement and are incorporated herein by reference.

You direct the disbursements shown on Truth-In-Lending Disclosure form, acknowledge receiving a copy of this Agreement and that form, Group Creditor Insurance Certificates, if any such coverage requested, and disability claim procedures.

☐ You do intend to use the proceeds of this loan primarily for personal, family, or household purposes. This loan is made pursuant to the California Finance Lenders Law, Division 9 of the Financial Code.

☐ You do not intend to use this loan for personal, family or household purposes. This loan is made pursuant to the California Finance Lenders Law, Division 9 of the Financial Code.

## NOTICE: THE FOLLOWING PAGE CONTAINS ADDITIONAL CONTRACT TERMS.

08-16-04 RE
OPT PPP

CAB655*4

*R538A5620A93CDEA9CDDCAB65514C**RAMOS*

CUSTOMER COPY

## LOAN REPAYMENT AND SECURITY AGREEMENT (Page 5 of 5)

As required by law, you herby notified that a negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligation.

ALTERNATIVE DISPUTE RESOLUTION AND OTHER RIDERS. The terms of the Arbitration Agreement and any other Riders signed as part of this loan transaction are incorporated into this Agreement by reference

APPLICABLE LAW. This loan was made for a personal, family or household purpose and is to be considered a consumer loan governed by the California Finance Lenders Law (CFLL). This loan is also a federally related loan authorized by Section 501(a), Part A, Title V, Public Law 96-221, also known as section 1735f-7(a), Title 12, United States Code, unless superseded by federal law. This loan also qualifies as an "alternative mortgage transaction" under the Alternative Mortgage Transactions Parity Act section of the Garn-St. Germain Depository Institutions Act of 1982, Sections 3801 through 3806, Title 12, United States Code. Regulations issued by the Office of Thrift Supervision, Department of Treasury, also govern.

# FOR INFORMATION CONTACT THE DEPARTMENT OF CORPORATIONS, STATE OF CALIFORNIA.

YOU HAVE RECEIVED A COMPLETE COPY OF THIS AGREEMENT AND THE TRUTH-IN-LENDING DISCLOSURES.

BORROWERS:

_____(SEAL)

_____(SEAL)

_____(SEAL)

WITNESS:

_____

CAB65515

*R53BA063DA03CEA0000CA8655*5C**RAMOS                    R                         CUSTOMER COPY

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LEWIS BRISBOIS BISGAARD & SMITH LLP
2850 GATEWAY OAKS DRIVE, SUITE 450
SACRAMENTO, CALIFORNIA 95833
TELEPHONE (916) 564-5400

**EXHIBIT "C"**

4842-9132-6723.1

-16-

DEFENDANT CITIMORTGAGE, INC.'S MOTION TO DISMISS COMPLAINT AND/OR FOR A MORE
DEFINITIVE STATEMENT



CitiFinancial Mortgage Company, Inc.
P.O. Box 142199
Irving, TX 75014-2199

July 29, 2006

Carl T. Ramos
7287 Fairplay Way
North Highland, CA 95660

Dear Carl T. Ramos:

This letter is in response to the inquiry regarding CitiFinancial Mortgage Company, Inc. account number 5003395149.

We have made the necessary corrections online with the four major credit reporting agencies: Experian, Equifax, TransUnion and Innovis. CitiFinancial Mortgage Company, Inc. will report your account as **current**.

The credit reporting agencies ask that you allow 30-90 days for these revisions to be completed. We suggest that you retain this letter for confirmation in the event that another credit grantor requires verification of the corrective action taken.

We apologize for any inconvenience and appreciate your patience. If we may provide additional assistance, please feel free to contact our Customer Service Center at 1-800-753-3673 and reference the account number listed above.

Sincerely,

Sheenah Starlin
Research Services
CitiFinancial Mortgage Company, Inc.

*Calls are randomly monitored and recorded to ensure quality service.

A member of citigroup

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
2850 GATEWAY OAKS DRIVE, SUITE 450
SACRAMENTO, CALIFORNIA 95833
TELEPHONE (916) 564-5400

**EXHIBIT "D"**

DEFENDANT CITIMORTGAGE, INC.'S MOTION TO DISMISS COMPLAINT AND/OR FOR A MORE
DEFINITIVE STATEMENT



**citi** financial
mortgage

**CitiFinancial Mortgage
Company, Inc.**

August 31, 2006

Carl T. Ramos
7287 Fair Play
North Highlands, Ca 95660

RE:    Loan No: 5003395149

Dear Mr. Ramos:

This letter is in response to correspondence received in our executive office on
August 15, 2006, our recent telephone conversation and further correspondence received
on August 31, 2006. I am responding on behalf of CitiFinancial Mortgage Company, Inc
(CFMC), as an Executive Communications Liaison.

First, allow me to offer my apologies for the frustrations you may have experienced with
the servicing areas of our organization. You may be assured the events that transpired do
not reflect our goal of outstanding customer service.

During our recent telephone conversation, you indicated that when your loan transferred
from Beneficial California Inc. to CFMC there were some issues resulting in your loan
appearing to be delinquent, when in fact it was current. This was corrected and your loan
is now showing current and paid to August 15, 2006.

We have made the necessary corrections on-line with the major credit bureau agencies:
Equifax, Experian (formerly TRW), Innovis and Trans Union. We informed them to
update their records to reflect your loan as current with no derogatory information.

Please allow thirty to forty-five days before requesting a copy of your credit report, so the
bureaus may update their records accordingly. If your credit report is not updated
properly, please provide a copy of this letter along with your dispute to the credit bureaus
at the following addresses:

| Equifax Info Services | Experian | Trans Union | Innovis |
|---|---|---|---|
| Disclosure Dept PO Box 740241 Atlanta, GA 30374 1-800-685-1111 | PO Box 2002 Allen, TX 75013 1-866-200-6020 | Consumer Solutions PO Box 2000 Chester, PA 19022 1-800-916-8800 | Consumer Assistance PO Box 1358 Columbus, OH 43216 1-800-540-2505 |

A member of citigroup

Page Two
Ramos

You also indicated that when you attempted to contact CFMC regarding a refinance converting your Adjustable Rate Mortgage to a Fixed Rate Mortgage, you were informed that you had to have your loan serviced by CFMC for a period of one year before your loan could be refinanced.

We requested the Modification Department to contact you regarding a potential modification to your loan for the following items:

- Modify the above referenced Adjustable Rate Mortgage to a Fixed Rate loan.
- Eliminate the Pre Payment Penalty.
- Change the payment due date from the 15th day of the month to the 1st day of the month.
- The fixed interest rate would decrease to 8.25%.

Greg Summers from CFMC has advised me that he has been in contact with you regarding the above potential modification and that you have agreed to the terms listed above. The modification will be submitted for approval to our underwriting department. Once approved the modification will be sent you for your approval and signature

Should you have any further questions regarding the above modification please contact Greg Summers directly at 1-800-888-6001, extension 52940. Thank you.

Sincerely,

Kay Frank

Kay Frank
Executive Communications
CitiFinancial Mortgage Company. Inc.
1000 Technology Drive, MS 20-1-372
O Fallon, MO 63368-2240

Cc. Greg Summers

*Calls are randomly monitored and recorded to ensure quality service

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LEWIS BRISBOIS BISGAARD & SMITH LLP
2850 GATEWAY OAKS DRIVE, SUITE 450
SACRAMENTO, CALIFORNIA 95833
TELEPHONE (916) 564-5400

**EXHIBIT "E"**

4842-9132-6723.1

-18-

DEFENDANT CITIMORTGAGE, INC.'S MOTION TO DISMISS COMPLAINT AND/OR FOR A MORE
DEFINITIVE STATEMENT

After Recording Return To:

CitiFinancial Mortgage Company, Inc.
Attn: CFMC/Trailing Documents
P.O. Box 104759
Irving, TX 75014

Lender Loan Number: 5003395149
If Applicable: MERS MIN:    100046000113110088                    MERS Phone: 1-888-679-6377

—————————————— [Space Above This Line For Recording Data] ——————————

# LOAN MODIFICATION AGREEMENT

This Loan Modification Agreement ("Agreement") is made this 9th day of September, 2006 (the "Effective Date")
by and between
CARL T RAMOS ("Borrower")
and CitiFinancial Mortgage Company, Inc. ("Lender")

, amends and supplements one certain loan agreement or promissory note ("Note") dated September 15, 2005, in
the original principal amount of two hundred seventy thousand seven hundred sixty two and 90/100ths Dollars
($270,762.90) executed by Borrower.

Borrower acknowledges that Lender is the holder and the owner of the Note and understands that Lender may
transfer the Note, as amended by this Agreement, and that anyone who takes the Note by transfer and who is entitled
to receive payments under the Note is called the "Lender" in this Agreement. The Note is secured by a Mortgage,
Deed of Trust, or Deed to Secure Debt (the "Security Instrument"), dated September 15, 2005, and filed for record
on September 19, 2005, under BOOK 20050919 page 0517 of the real property records of Sacramento County,
California. Said Security Instrument conveys the real and personal property described in such Security Instrument
(the "Property") located at:
7287 FAIRPLAY WY, NORTH HIGHLAN, CA 95660
(Property Address): which real property is more particularly described in the Security Instrument.

> [X]    MERS LOAN. If this box is checked, the loan evidenced by the Note and secured by the Security
> Instrument was assigned to or the Security Instrument was prepared in the name of the Mortgage Electronic
> Registration Systems, Inc. ("MERS"). MERS is a separate corporation that is acting solely as nominee for
> Lender and Lender's successors and assigns. MERS is organized and existing under the laws of Delaware
> and has an address and telephone number of P. O. Box 2026, Flint, MI 48501-2026, (888) 679-6377. All
> references to Lender shall mean the Lender above and, to the extent referencing the holder of the Security
> Instrument, shall reference MERS acting solely as nominee for Lender

Lender has made certain advances under the Security Instrument for which Borrower is obligated to pay
Lender upon demand or certain payments otherwise due under the terms of the Note or Security Instrument are
currently past due. Borrower now desires to extend or rearrange the time and manner of (re)payment of the Note
and to extend and carry forward the lien(s) on the Property whether created by the Security Instrument or otherwise.
Lender, the legal holder and owner of the Note and of the lien(s) securing the same has agreed at the request of the
Borrower to extend or rearrange the time and manner of payment of the Note.

For and in consideration of the mutual promises and agreements exchanged, the parties hereto agree as
follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1.    ☐    **Modification Fee:** If this box is checked, Borrower agrees to pay Lender a fee for processing the
modification set forth in this Agreement of $             . This Modification Fee shall be due and payable

Loan No: 5003395149

Loan Modification Agreement (Fixed Rate/Capitalization)
CitiFinancial Mortgage Company, Inc.                Page 1 of 11                        Document1_042906

on the Maturity Date as set forth below, unless the loan is paid prior to maturity by payoff or otherwise, when such fee shall be due and payable.

· 2.    **Waived or Forgiven Amounts**: For and in consideration of the modification of the loan as described herein, Lender has agreed to waive or forgive the following amounts that have accrued and are owing under the Note or Security Instrument, as follows:

| | | |
|---|---|---|
| (i) | Unpaid Principal<br>(not included in paragraph 3 below) | $ 0.00 |
| (ii) | Accrued Interest Previously Extended<br>(not included in paragraph 4 below) | $ 0.00 |
| (iii) | Accrued Interest Currently Due<br>(not included in paragraph 3 or 4 below) | $ 0.00 |
| (iv) | Late Charges<br>(not included in paragraph 3 or 4 below) | $ 5.00 |
| (v) | Advances regarding real estate taxes or to pay<br>insurance premiums<br>(not included in paragraph 3 or 4 below) | $ 0.00 |
| (vi) | Appraisal fees, attorneys' fees, costs,<br>foreclosure or other legal expenses and<br>advances regarding prior lien-holder or other<br>claims, if any.<br>(not included in paragraph 3 or 4 below) | $ 0.00 |
| | Total Waived/Forgiven Amount | $ 5.00 |

Borrower acknowledges and understands that Lender may be required to report certain cancellation of debt for discharges of indebtedness to the Internal Revenue Service on Form 1099-C or a similar form, including any that may be reportable because of this Agreement.

3.    **Acknowledgment of Principal Balance**: Borrower acknowledges that as of the Effective Date and except for the Additional Amounts described in paragraph 4 below, and after excluding the Waived/Forgiven . Amount described in paragraph 2 above, the amount payable under the Note and secured by the Security Instrument is the total of the following amounts indicated below:

| Description | Amount Due | |
|---|---|---|
| (i) Unpaid principal balance<br>(not included in paragraph 1 above) | $268,420.28 | |
| (ii) Accrued unpaid interest<br>(not included in paragraph 2 above or 4 below) | $ 0.00 | |
| (iii) Late charges accrued and unpaid<br>(not included in paragraph 2 above or 4 below) | $ 0.00 | |
| (iv) Advances regarding real estate taxes or to pay<br>insurance premiums<br>(not included in paragraph 2 above or 4 below) | $ 0.00 | |
| (v) Appraisal fees, attorneys fees, costs, foreclosure<br>or other legal expenses and advances regarding<br>prior lien-holder or other claims<br>(not included in paragraph 2 above or 4 below) | $ 0.00 | |
| (vi) Advances to establish initial escrow account, if<br>any | $ 0.00 | |
| Total Amount Due | $268,420.28 | (the "Principal Balance"). |

4.    **Additional Amounts Owed.** The Borrower acknowledges and agrees that in addition to the Principal Balance described in paragraph 3 above, and after excluding the Waived/Forgiven Amount described in paragraph 2 above, Borrower is currently obligated to Lender for the following additional charges listed under the Additional Amount column below, herein referred to as the "Additional Amount." The Additional Amount has accrued or been incurred under the terms of the loan documents and/or Security Instrument or under the terms of this Agreement.

|       |                                                                                                                              | Additional Amount |
|-------|------------------------------------------------------------------------------------------------------------------------------|-------------------|
| (i)   | Modification Fee                                                                                                             | $0.00             |
| (ii)  | Accrued Interest Previously Extended (not included in paragraph 2 above)                                                    | $ 0.00            |
| (iii) | Accrued Interest Currently Due (not included in paragraph 2 or 3 above)                                                     | $1,554.60         |
| (iv)  | Late Charges accrued and unpaid (not included in paragraph 2 or 3 above)                                                    | $ 0.00            |
| (v)   | Advances regarding real estate taxes or to pay insurance premiums (not included in paragraph 2 or 3 above)                  | $ 0.00            |
| (vi)  | Appraisal fees, attorneys' fees, costs, foreclosure or other legal expenses and advances regarding prior lien-holder or other claims against property, if any (not included in paragraph 2 or 3 above) | $ 0.00            |
|       | **Additional Amount Total**                                                                                                  | **$1,554.60**     |

The Additional Amount is in addition to the Principal Balance described in paragraph 3 above. The Additional Amount shall continue to be due and owing by Borrower to Lender in accordance with the terms of the loan documents and Security Instrument or due to this modification; provided however, Lender agrees that for so long as Borrower makes the principal and interest payments as provided in paragraph 6 below in a timely manner and ultimately pays the Additional Amount to the extent obligated under the terms of the loan documents or Security Instrument, which if not sooner demanded shall be due and payable upon any voluntary loan payoff or on the Maturity Date, Lender will not seek to enforce its security interest under the terms of the Security Instrument solely for failure to pay the Additional Amount.

Notwithstanding the foregoing, to the extent personal liability of any or all of the Borrowers (if more than one) has been discharged in bankruptcy with respect to any amount payable under the Note, as modified herein, nothing contained herein shall be construed to impose personal liability to repay any such obligation on the Borrowers whose obligations have been so discharged. The Borrowers acknowledge that the Additional Amount set forth above may not be reflected in the loan amount reported by Lender to any credit reporting agency or reported as part of the balance on any receipt or statement issued by Lender, but nevertheless Borrowers acknowledge that such Additional Amount is due and payable as set forth above. **Notice: The Parties understand and agree that any amounts that are written off, capitalized into principal or deferred to the end of the loan will all be characterized as "waived" in the first monthly statement that captures the terms of the Loan Modification.**

<u>**Important: The parties understand and agree that the Additional Amount Total set forth above does not include any amounts previously deferred under a prior Modification Agreement. Borrowers understand and agree that any amount previously deferred and unpaid remains due and payable as set forth in the prior modification agreement.**</u>

5.    **Repayment Terms:** Interest will be charged on the Principal Balance until the full amount of principal has been paid. Borrower will pay interest at the rate of 8.25% per year from the Effective Date.

Any terms of the Note or Security Instrument which would result in any further interest rate reduction, including without limitation a Timely Payment Rewards program, Smart Step program or Freedom Loan program, are hereby deleted and will not be applicable to the Note as modified herein. Further, any terms of the Note or Security Instrument which provide for an adjustment of the interest rate are hereby deleted.

6.    **Time and Place of Payments:** The Borrower promises to make monthly principal and interest payments of U.S. **$2032.70**, beginning on **October 9, 2006**, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. If on **September 9, 2035** ("Maturity Date"), the Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, the Borrower will pay these amounts in full on the Maturity Date. The Borrower will make such payments at **P.O. Box 9023, Des Moines, IA 50362-9023**, or at such other place as Lender may require. Payments will be applied in accordance with the terms of the Note and Security Instrument or other loan documents.

7.    **Automatic Payment Draft:** If Borrower currently participates in a program allowing a decrease in interest rate when payments are made by automatic draft or other electronic means, including without limitation the Equity Builder, ACH or other process, such interest rate decrease shall be in addition to the revised interest rate set forth in paragraph 5 above. In addition, the amount of the automatic draft contained in the payment draft, ACH, Equity Builder or other process will not change unless instructed by Borrower to Lender in writing.

8.    **Payment Waiver Protection Monthly Fee.** If the terms of Borrower's Note or other loan document provides for a monthly fee for Payment Waiver Protection coverage, in addition to the monthly payment of principal and interest, such monthly fee shall continue provided, the monthly fee payable shall be changed to the following:

PWP Monthly Fee: $

Other than the change in the monthly fee amount, all other terms of the Payment Waiver Protection Program remain in effect

9.    **Late Charges for Overdue Payments:** If the Lender has not received the full amount of any monthly payment when due, Borrower will pay a late charge to the Lender in an amount as set forth in the Note.

10.   **Borrower's Right to Prepay:** Borrower has the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When Borrower makes a prepayment, Borrower will tell the Note Holder in writing that Borrower is doing so and will pay to Lender any prepayment penalty or fee provided in the Note or Security Instrument, if any.

11.   **Renewal and Extension of Maturity:** It is the intention of the parties that all liens and security interests described in the Security Instrument are hereby renewed and extended (if the Maturity Date of the original Note has been changed) until the Indebtedness evidenced by the Note, as renewed, modified, and extended (if the Maturity Date of the original Note has been changed) hereby, has been fully paid. Lender and Borrower acknowledge and agree that such extension (if the Maturity Date of the original Note has been changed), renewal, amendment, modification, or rearrangement shall in no manner affect or impair the Note or the liens and security interests securing same, the purpose of this Agreement being simply to extend (if the Maturity Date of the original Note has been changed). modify, amend or rearrange the time and the manner of payment of the Note and the indebtedness evidenced thereby, and to carry forward all liens and security interests securing the Note (including if applicable any and all vendor's liens securing the Note), which are expressly acknowledged by the Borrower to be valid and subsisting, and in full force and effect so as to fully secure the payment of the Note. The Borrower hereby expressly waives the benefit of any and all statures of limitation which might otherwise inure to Borrower's benefit, or be in any way applicable to Borrower's obligations under the terms of any and all instruments described herein.

12.   **Transfer of the Property or a Beneficial Interest in Borrower:** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in the Borrower is sold or transferred and the

Borrower is not a natural person) without the Lender's prior written consent, the Lender may, at its option, require immediate payment in full of all sums secured by the Security Instrument. If the Lender exercises this option, the Lender shall give the Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which the Borrower must pay all sums secured by this Security Instrument. If the Borrower fails to pay these sums prior to the expiration of this period, the Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on the Borrower.

13. **Release and Waiver of Other Claims:** In consideration of the modification of certain provisions of the Note and Security Instrument, all as herein provided, and the other benefits received by Borrower hereunder, Borrower acknowledges that Borrower currently has no claims against Lender arising out of the origination or servicing of the Note or Security Instrument and does hereby release Lender, and its predecessors, successors, affiliates, assigns, agents, officers, directors, employees and representatives, of and from any and all claims, demands, actions and causes of action of any and every kind of character, whether known or unknown, present or future, which Borrower may have against Lender, and its predecessors, successors, affiliates, assigns, agents, officers, directors, employees and representatives, arising out of or with respect to any and all transactions relating to the Note and the Security Instrument occurring prior to the date hereof.

14. **Loan Documentation:** As amended hereby, the provisions of the Note and Security Instrument shall continue in full force and effect, and the Borrower acknowledges and reaffirms Borrower's obligations to Lender thereunder. In the event of any inconsistency between this Agreement and the terms of the Note and Security Instruments, this Agreement shall govern. Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument. Except as otherwise specifically provided in this Agreement, the Note and Security Instrument will remain unchanged, and the Borrower and Lender will be bound by, and comply with, all of the terms and provisions thereof, as amended by this Agreement. Any default by Borrower in the performance of its obligations herein contained shall constitute a default under the Note and Security Instrument, and shall allow Lender to exercise all of its remedies set forth in said Security Instrument.

15. **Co-Signer Liability:** Notwithstanding any provision to the contrary in this Agreement, if any Borrower designated above signs this Agreement but did not execute the Note, such Borrower shall be deemed to be co-signing this Agreement only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Agreement, and shall be deemed a "Co-signer" under this paragraph. Such Co-signer is not personally obligated to pay the sums secured by the Security Instrument, and agrees that Lender and the remaining Borrower's may agree to extend, modify, forbear or make any accommodations with regard to the terms of the Note or the Security Instrument, without Co-signer's consent.

16. **Taxes and Insurance.** Borrower acknowledges that the monthly payments on the Note, as modified and set forth in paragraph 6 above, do not include escrow payments for taxes and insurance or other payments. Unless Borrower is required to establish an escrow account herewith and an escrow account is established, the payment of such items remains the sole obligation of Borrower. Borrower acknowledges that in the event Lender has advanced or advances funds for the payment of real estate taxes that are included in the Principal Balance set forth in this Agreement and if such advanced funds are returned to the Lender by a taxing authority for any reason, then the amount of such funds returned to the Lender shall be applied to reduce the amount of the Principal Balance.

17. **Escrow Provisions.**

The Security Instrument shall be amended to add the following escrow provisions:

A. Definitions:

"Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

"Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

"RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

"Security Instrument" means the mortgage, deed of trust, deed to secure debt, or other designated document which secures the obligation of Borrower to Lender, to which this Addendum is added.

<u>B. Funds for Escrow Items.</u> Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; and (c) premiums for any and all insurance required by Lender under Section D. below. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require.

Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights and pay such amount and Borrower shall then be obligated to repay to Lender any such amount immediately upon demand. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given to Borrower and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section B.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA. If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall

pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

C. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property. If any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section B above

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section C.

Lender may require Borrower to pay a one-time charge for real estate tax verification and/or reporting service used by Lender in connection with this Loan.

D. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section D shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal

notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property by foreclosure or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

☐ If checked, an Escrow Account is required to be established by Borrower for the payment of the Escrow Items described in the Escrow Provisions above. The sums required for payment of the Escrow Items shall be in addition to the monthly principal and interest payment set forth in paragraph 5 above. If not checked, Escrow Items will not be collected by Lender and Borrower shall be solely responsible for payment of all taxes and insurance premiums.

18. **Credit Insurance.** If Borrower purchased any credit life insurance, credit disability insurance or other type of credit insurance in connection with the original loan which is modified in this Agreement, Borrower acknowledges that such insurance will continue to cover only that coverage amount and for that term described in the Certificate of Insurance.

19. **No Oral Agreements:** The written Loan Agreements represent the final agreements between the parties and may not be contradicted by evidence of prior, contemporaneous, or subsequent orni agreements of the parties. There are no unwritten oral agreements between the parties.

EXECUTED effective as of the day and year first above written.

Witnesses (Required if Property located in CT, FL, GA, LA, SC or VT):

_____ (Witness)    **CARL T RAMOS** _____ (Borrower)

_____ (Witness)    _____ (Borrower)

Loan No: 5003395149

_____ (Witness)

_____ (Borrower)

_____ (Witness)

_____ (Borrower)

ACCEPTED AND AGREED TO BY LENDER:
CitiMortgage, Inc. successor by reason of merger
with CitiFinancial Mortgage Company, Inc.

If MERS Loan:
Mortgage Electronic Registration Systems. Inc.

By: _____

By: _____

Title: _____

Title: _____

————————————[Acknowledgments on Following Pages]————————————

Loan No: 5005395149

Loan Modification Agreement (Fixed Rate/Capitalization)
CitiFinancial Mortgage Company, Inc.                Page 9 of 11                        DOC_00001 011506